**ARMENTA & SOL, PC**
M. Cris Armenta (SBN 177403)
Credence E. Sol (SBN 219784)
11440 West Bernardo Court, Suite 300
San Diego, CA 92127
Telephone: (858) 753-1724
Facsimile: (310) 695-2560
cris@crisarmenta.com
credence@crisarmenta.com

Attorneys for Plaintiffs
JOHN DOE, MICHAEL DOE, JAMES DOE,
HENRY DOE, ROBERT DOE, CHRISTOPHER
DOE, MATTHEW DOE, POLLY ST. GEORGE,
SCOTT DEGROAT, DAVID J. HAYES, DANIEL
LEE, MISHEL McCUMBER, JEFF PEDERSEN,
JORDAN SATHER, SARAH WESTALL

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual; MICHAEL DOE, an individual; JAMES DOE, an individual; HENRY DOE, an individual; ROBERT DOE, an individual; CHRISTOPHER DOE, an individual; MATHEW DOE, an individual; POLLY ST. GEORGE, an individual; SCOTT DEGROAT, an individual; DAVID J. HAYES, an individual; DANIEL LEE, an individual, MISHEL McCUMBER, an individual; JEFF PEDERSEN, an individual; JORDAN SATHER, an individual; SARAH WESTALL, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> GOOGLE, LLC., a Delaware limited liability company; YOUTUBE LLC, a Delaware limited liability company; DOES 1 through 10, inclusive. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND VIOLATION OF THE FIRST AMENDMENT** <br><br> **[Demand for Jury Trial]** <br><br> **[Emergency Injunctive Relief Requested]** |

1

1

2

## <u>PRELIMINARY STATEMENT AND INTRODUCTION</u>

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

This lawsuit and request for an emergency injunction addresses YouTube's October 15, 2020, purge of accounts in which YouTube abruptly deleted conservative content from its platform and terminated the accounts and channels that had hosted that content.  YouTube's massive de-platforming, which occurred just three weeks before the 2020 Presidential election, worked to the severe detriment of both conservative content creators and American voters who seek out their content.  YouTube took this draconian action so swiftly that the Plaintiffs, conservative content creators with whom YouTube had a contractual relationship memorialized by YouTube's Terms of Service, received no advance notice and were not able to download their own content.  Why did YouTube do this?  To frustrate the contracts and to mollify its partner, Congress, which just days before had passed H.R. 1154, a resolution condemning the existence of conservative content—which it characterized as conspiracy theories—on the Internet.

In this action, Plaintiffs seek immediate and emergency relief from Defendants' breaches of their contract with Plaintiffs, which have worked to completely deny Plaintiffs the benefits of the contracts and services for which they bargained, to obliterate Plaintiffs' livelihoods, and to deprive both Plaintiffs and their subscribers of their First Amendment rights.  Given that the Presidential election is approaching on November 3 and that Plaintiffs routinely provide news, commentary and information about issues that are directly relevant to that election, Plaintiffs seek immediate and emergency relief by way of a Temporary Restraining Order and/or Injunction to avoid irreparable harm that cannot be cured or later resolved through monetary damages alone.  Once the issue of emergency relief has been resolved, Plaintiffs intend to amend this Complaint to add claims for money damages along with causes of action for, *inter alia*, intentional interference with prospective economic advantage.  However, given the urgency of this action, this initial Complaint is directed exclusively to the emergency relief that Plaintiffs seek.

27

28

2

**NATURE OF THE CASE**

1.    Brief Overview of Plaintiffs and Their Channels:  The fifteen Plaintiffs are journalists, videographers, advocates, commentators and other individuals who regularly exercise their right to free speech under the First Amendment of the Constitution of the United States. Plaintiffs have created seventeen individual news channels and published those channels on the YouTube platform.  Plaintiffs' channels were categorized on YouTube as "News" or "News and Politics."  Plaintiffs' commentaries, channels and videos have had an enormous audience reach both in the United States and throughout the world.  On October 15, 2020, Plaintiffs' reach was so widespread that they collectively had more than 4.5 million subscribers to their channels and had attracted more than 771 million views.  Taken together, these subscriber counts far exceed the individual viewership of the YouTube accounts maintained by legacy cable, journalism, and news networks such as C-SPAN (806K subscribers), *The New York Times* (3.21M subscribers), Fox News (6.52M subscribers), MSNBC (3.62M subscribers), NBC News (4.1M), and CBS News (3.06M subscribers).  Although it is clear that millions of Americans get their news, information and commentary on issues of national importance from the Plaintiffs' conservative channels, YouTube excised them and their political viewpoints off the YouTube platform without notice, **just days 19 before the 2020 Presidential Election.**

2.    YouTube is Becoming More Important than Television.  YouTube is a popular online service for sharing videos and related content.  YouTube's domain, www.youtube.com, was activated on February 14, 2002.  The first YouTube video was published on April 23, 2005. On October 9, 2006, Google purchased YouTube for $1.65 billion.  By May 2010, YouTube served more than 2 billion views each day.  By March 2013, YouTube was seeing 1 billion monthly active users.  According to statistics published by Brandwatch, a leading social intelligence company, 6 out of 10 people prefer online video platforms to live TV, and it is predicted that by 2025, half of the population under the age of 32 will not subscribe to a pay-TV service.  YouTube is the world's second-largest search engine and the world's second most-visited site (after Google).  YouTube, which has 1.9 billion users, is the second most popular social media

platform in the United States and the world.  Quoting from the Pew Research Center study, Brandwatch reports that one in five YouTube users say that YouTube is very important to "understanding things happening in the world."  See https://www.brandwatch.com/blog/youtube-stats/.

   3. <u>Many Americans Get Their News from Independent YouTube Channels.</u> According to the Pew Research Center, a nonpartisan think tank based in Washington, D.C. that provides information about social issues, public opinion and demographic trends shaping the United States and the world, legacy and independent media are thriving side by side, and established news organizations no longer have full control over the news Americans watch.  Most YouTube news consumers view both legacy and independent news videos on the platform.  An extensive survey conducted by the Pew Research Center confirms that independent news channels occupy a prominent position in YouTube's media ecosystem.  The 377 most popular YouTube channels represent a mixture of established news organizations (49%) and independent channels (42%).  See Stocking, Gale et al., "Many Americans Get News on YouTube, Where News Organizations and Independent Producers Thrive Side by Side," Pew Research Center, Sept. 28, 2020, https://www.journalism.org/2020/09/28/many-americans-get-news-on-youtube-where-news-organizations-and-independent-producers-thrive-side-by-side/.

   4. <u>YouTube Partners with Content Creators, Allowing Them to Create Channels and Publish Content Such as News Channels Pursuant to Their Terms of Service.</u>  To create a channel and post videos, Plaintiffs and YouTube agree that their relationship will be governed by YouTube's published Terms of Service ("TOS") and their incorporated Community Guidelines.  The TOS provide, *inter alia*, that "YouTube is under no obligation to host or serve Content."  However, once YouTube actually hosts the content, YouTube and the creator agree to be bound by the TOS.  When the creator publishes content on YouTube, the terms of the TOS dictate the procedure for content removal and/or account termination.  The relevant ground rules are as follows:

4

a.    *Accounts May be Removed at Any Time by Their Creators:*  According to the TOS, content creators may remove their own content at any time:  "**Terminations by You. You may stop** using the Service at any time. Follow these instructions to delete the Service from your Google Account, which involves closing your YouTube channel and removing your data. You also have the option to download a copy of your data first."

b.    *YouTube May Terminate or Suspend an Account for Cause:*  The provision governing YouTube's suspension or termination of accounts states as follows: "YouTube may suspend or terminate your access, your Google account, or your Google account's access to all or part of the Service if (a) you materially or repeatedly breach this Agreement; (b) we are required to do so to comply with a legal requirement or a court order; or (c) we believe there has been conduct that creates (or could create) liability or harm to any user, other third party, YouTube or our Affiliates."

c.    *YouTube Must Provide Notice of Terminations and Suspensions:*  We will notify you with the reason for termination or suspension by YouTube unless we reasonably believe that to do so:  (a) would violate the law or the direction of a legal enforcement authority, or would otherwise risk legal liability for YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates. *Where YouTube is terminating your access for Service changes, where reasonably possible, you will be provided with sufficient time to export your Content from the Service.*"  (Emphasis added.)

d.    *The TOS Incorporate Community Guidelines:*  YouTube's Community Guidelines include policies against harassment and cyberbullying, which prohibit content that "encourages dangerous or illegal activities that risk serious physical harm or death."  See https://support.google.com/youtube/answer/2801964?hl=en&ref_topic=9282436.  YouTube has provided a list of examples of what types of content constitute "harassment and cyberbullying" for the purposes of its Community Guidelines and TOS, including the following:  (1) extremely dangerous challenges; (2) dangerous or threatening pranks; (3) instructions to kill or harm;

1   (4) hard drug use or creation; (5) glorifying or encouraging eating disorders; (6) promoting or

2   glorifying violent events; (7) bypassing payment for digital content or services; and (8) promoting

3   dangerous remedies or cures.

4          5.      On October 15, 2020, YouTube Announced an Expansion of Its Hate and

5   Harassment Policies to Exclude Targeted Content "Used to Justify Real-world Violence," But Did

6   Not Actually Amend its TOS Consistent with its Announcement:   On October 15, 2020, YouTube

7   posted a blog post in which it indicated that "Today, we are taking another step in our efforts to

8   curb hate and harassment by removing more conspiracy theory content used to justify real-world

9   violence."  See https://blog.youtube/news-and-events/harmful-conspiracy-theories-youtube.  In the

10   blog post, the YouTube Team stated that it was "further expanding both our hate and harassment

11   policies to prohibit content that targets an individual or group with conspiracy theories that have

12   been used to justify real-world violence."  Notably, however, with respect to the claimed

13   amendment, YouTube *did not actually amend its Terms of Service in the manner it claimed on its*

14   *blog* prior to de-platforming the Plaintiffs.[1]

15          6.      On October 15, 2020, YouTube Abruptly Instigated a Mass Purge of Conservative

16   Accounts, Including Those Operated by Plaintiffs, Based on Its "Hate and Harassment" Policies,

17   In a Manner That Violated the TOS: On October 15, 2020, YouTube terminated and/or suspended

18   Plaintiffs' news channels, rendering those channels unviewable, preventing Plaintiffs from

19   providing commentary and news on issues of national importance and preventing Plaintiffs'

20   millions of viewers from accessing commentary and news that they are interested in viewing.

21   YouTube provided Plaintiffs with no advance notice before deleting their channels, thus violating

22   its own TOS, which specifically provide that if YouTube makes "Service changes," the affected

23   creators "will be provided with sufficient time to export [their] Content from the Service."

24

25   _____

26   [1]      After the Plaintiffs were de-platformed, YouTube appears to have added the following language to "examples" of its harassment and cyberbullying policy: "Targeting an individual and making claims they are involved in human trafficking in the context of a harmful conspiracy theory where the conspiracy is linked to direct threats or violent acts."  However, this change was not made until *after* Plaintiffs were de-platformed.  See Exhibit A (YouTube's October 15, 2020 policy); Exhibit B (YouTube's October 17, 2020 policy).

27

28

YouTube did not provide Plaintiffs with **any** time, let alone "sufficient time," to export their Content from the YouTube platform.  As a result, many of the Plaintiffs could not even take their previously posted work to alternative platforms for republication, and they also lost contact with their millions of subscribers.  Moreover, even Plaintiffs who did retain some access to their content were summarily deprived of the benefits they had bargained and worked for—most significantly, a large audience built up over many years that they now cannot effectively reach, and in many cases, cannot even contact over other social media platforms, because those social media platforms are also purging Plaintiffs' accounts and similarly situated persons.

7.      YouTube Breached the TOS by Suspending/Terminating Accounts Without Cause as Defined in the TOS:  As set forth below with particularity as to each Plaintiff, YouTube breached the TOS because it suspended or terminated the accounts of the Plaintiffs despite the following facts: (a) the Plaintiffs, and each of them, did not repeatedly or materially or breach the Agreement with YouTube; (b) there was no legal requirement or court order with which YouTube had to comply by suspending or terminating the accounts; and (c) YouTube did not believe there was conduct that creates or could create liability or harm to any user or third party, YouTube or its affiliates.

8.      YouTube Breached the TOS by Failing to Provide a Reason for Account Suspension/Termination in Compliance with the TOS:   As set forth below with particularly as to each Plaintiff, YouTube breached the TOS because it failed to notify each of the Plaintiffs as to "the reason for termination of suspension" by YouTube.  (Emphasis added.)  The notices that YouTube provided to the Plaintiffs did not identify a *specific* reason for the termination or suspension of their contracts.  Instead, YouTube indicated only that there were *two* possible reasons and even with respect to those two reasons, YouTube did not indicate *how* the targeted accounts violated the TOS or incorporated Community Guidelines, stating only that "We'd like to inform you that due to repeated or severe violations of our Community Guidelines (https://www.youtube.com/t/community_guidelines) your YouTube account [account name] has been suspended."  While some of the Plaintiffs received this identical cut-and-paste language from

7

the TOS and remain baffled about how their content is alleged to have been out of compliance and/or what specific content they posted gave rise to the claim that their content was violative of the Community Guidelines, other Plaintiffs received no notice whatsoever.  Was it content about Hunter Biden and the Ukraine scandal or the ongoing corruption probe?  Was it content about social media censorship?  Was it content about anonymous posts on political issues by someone identifying themselves as "Q" and the persons who read and talk about those posts?  Was it posts about race relations or protests in America?  Again, Plaintiffs remain baffled as to what, specifically in their content led them to be part of the massive de-platforming, other than the commonality that they are conservative news channels with widespread audience reach.

9.     YouTube Violated California Contract Law by Amending the TOS in a Manner that Frustrated Their Purpose:  Even if YouTube were to allege that the new amended TOS provisions discussed in its blog applied (even though they did not exist at the time) and it could claim to use that amended policy to entitle YouTube to suspend or terminate Plaintiffs' accounts, the amended TOS are invalid to the extent that they resulted in a termination of the contracts between the Plaintiffs and YouTube because under California law, a party may not invoke a unilateral right to amend a contract in a such a manner as to frustrate the purpose of the contract.  Because YouTube gave no advance notice of its policy, it did not provide Plaintiffs an opportunity to take down any violative content so that they could maintain their contractual relationship with YouTube.

10.     YouTube Engaged in State Action by Capitulating to Government Coercion to Terminate Plaintiffs' Accounts and Thus, Violated Plaintiffs' Right to Free Speech Under the First Amendment:  As set forth above, YouTube "hopped to it" shortly after Congress passed H.R. 1154, a resolution condemning the existence of a certain type of conservative content on social-media platforms.  The bill was passed in a political context in which representatives of the largest social-media platforms are regularly being hauled in front of Congressional committees to answer for business practices related to data collection and consumer privacy, powerful members of Congress have openly stated that social media platforms could lose their immunity from suit

8

under Section 230 of the Communications Decency Act if they do not cooperate with the government, Supreme Court Justice Thomas has issued a dissent from denial of certiorari indicating that the time is ripe for the Supreme Court to entertain a case involving whether the lower courts have interpreted Section 230 too broadly, and the Department of Justice (together with eleven states' Attorney Generals) has filed a blockbuster antitrust case seeking the breakup of behemoth Google.  In other words, YouTube's position and ability to do business going forward have become precarious indeed, especially if it refuses to "play ball" with powerful government officials who hold YouTube and Google's very existence in their hands.  Plaintiffs contend that in this environment of coercion and pressure, YouTube's termination of their accounts amounts to state action, rendering it vulnerable to a First Amendment challenge.

> 11.    <u>If YouTube Engaged in State Action, Plaintiffs' First Amendment Rights Have Been Violated:</u>  Because Plaintiffs are citizen journalists who regularly provide news reporting and political commentary to a wide audience of Americans who seek out Plaintiffs' channels, the First Amendment rights of Plaintiffs' right to speak and the public's right to hear are directly implicated.  Because YouTube terminated and suspended Plaintiffs' channels just 19 days before the November 3 election—and because many Americans have been engaged in early voting since October 15—a resolution of the propriety of YouTube's account terminations and suspensions is urgently required. Plaintiffs seek specific performance of the TOS contract and seek immediate injunctive relief ordering YouTube to restore their channels to the condition in which they existed on October 15, 2020.  Because Plaintiffs' channels address issues of public concern that are highly relevant to the November 3 election and its anticipated aftermath, and because Plaintiffs have been given no time to expeditiously find an alternative platform for the widespread dissemination of their speech, both Plaintiffs and the public will suffer irreparable harm in the absence of an immediate and affirmative injunction.

1

## <u>YOUTUBE ANALYTICS CONCERING EACH OF THE PLAINTIFFS</u>

2        12.     PLAINTIFF JOHN DOE created a YouTube channel called "JustInformed

3   Talk" on January 15, 2015.  PLAINTIFF JOHN DOE entered into the TOS contract with

4   YouTube.  During the course of the contractual relationship, PLAINTIFF JOHN DOE uploaded

5   890 videos to the channel, which garnered more than 281,000 subscribers.  In the aggregate, the

6   890 videos were viewed approximately 60,154,395 times.  The channel was classified on

7   YouTube as a news channel.  The channel had no history of strikes or prior violations.  On

8   October 15, 2020, YouTube notified PLAINTIFF JOHN DOE that the account was suspended

9   "due to repeated or severe violations of our Community Guidelines."  No advance notice was

10  given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF JOHN DOE to

11  download the content contained on the "Just Informed Talk" news channel.

12        13.     PLAINTIFF MICHAEL DOE created a YouTube channel called "SGT Report

13  *2*" on January 26, 2011, when he entered into the TOS contract with YouTube.  During the

14  course of the contractual relationship, PLAINTIFF MICHAEL DOE uploaded 31 videos to the

15  channel, which garnered more than 107,000 subscribers.  In the aggregate, the 31 videos were

16  viewed approximately 1,597,694 times.  The channel was classified on YouTube as a news

17  channel.  The channel had no history of strikes or prior violations.  On October 15, 2020,

18  YouTube notified PLAINTIFF MICHAEL DOE that the account was suspended "due to repeated

19  or severe violations of our Community Guidelines."  No advance notice was given.  There was not

20  any notice, nor sufficient notice, to permit PLAINTIFF MICHAEL DOE to download the content

21  contained on the "SGT Report *2" news channel.

22        14.     PLAINTIFF MICHAEL DOE created a YouTube channel called "SGTreport" on

23  February 3, 2007 entered into the TOS contract with YouTube.  During the course of the

24  contractual relationship, PLAINTIFF MICHAEL DOE uploaded 1,469 videos to the channel,

25  which garnered more than 630,000 subscribers.  In the aggregate, the 1,469 videos were viewed

26  approximately 130,503,359 times.  The channel was classified on YouTube as a news channel.

27  The channel had no history of strikes or prior violations.  On October 15, 2020, YouTube notified

28

1   PLAINTIFF MICHAEL DOE that the account was suspended "due to repeated or severe

2   violations of our Community Guidelines."  No advance notice was given.  There was not any

3   notice, nor sufficient notice, to permit PLAINTIFF MICHAEL DOE to download the content

4   contained on the "SGTreport" news channel.

5        15.     PLAINTIFF JAMES DOE created a YouTube channel called "X22Report" on

6   February 4, 2013 and entered into the TOS contract with YouTube.  During the course of the

7   contractual relationship, PLAINTIFF JAMES DOE uploaded 3,721 videos to the channel, which

8   garnered more than 952,000 subscribers.  In the aggregate, the 3,721 videos were viewed

9   approximately 292,569,198 times.  The channel was classified on YouTube as a people channel.

10  The channel had history of a single strike or prior violations.  On October 15, 2020, YouTube

11  notified PLAINTIFF JAMES DOE that the account was suspended "due to repeated or severe

12  violations of our Community Guidelines."  No advance notice was given.  There was not any

13  notice, nor sufficient notice, to permit PLAINTIFF JAMES DOE to download the content

14  contained on the "X22Report" news channel.

15        16.     PLAINTIFF HENRY DOE created a YouTube channel called "SpaceShot76" on

16  December 15, 2008 and entered into the TOS contract with YouTube.  During the course of the

17  contractual relationship, PLAINTIFF HENRY DOE uploaded 792 videos to the channel, which

18  garnered more than 159,000 subscribers.  In the aggregate, the 792 videos were viewed

19  approximately 32,227,188 times.  The channel was classified on YouTube as an entertainment

20  channel.  The channel had no history strikes and only a single violation.  On October 15, 2020,

21  YouTube notified PLAINTIFF HENRY DOE that the account was suspended "due to repeated or

22  severe violations of our Community Guidelines."  No advance notice was given.  There was not

23  any notice, nor sufficient notice, to permit PLAINTIFF HENRY DOE to download the content

24  contained on the "SpaceShot76" news channel.

25        17.     PLAINTIFF ROBERT DOE created a YouTube channel called "TRUreporting" on

26  May 5, 2015 and entered into the TOS contract with YouTube.  During the course of the

27  contractual relationship, PLAINTIFF ROBERT DOE uploaded 707 videos to the channel, which

28

11

garnered more than 216,000 subscribers.  In the aggregate, the 707 videos were viewed approximately 23,626,051 times.  The channel was classified on YouTube as a news channel.  The channel had no history of any strikes. On October 15, 2020, YouTube notified PLAINTIFF ROBERT DOE that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF ROBERT DOE to download the content contained on the "TRUreporting" news channel.

18.     PLAINTIFF CHRISTOPHER DOE created a YouTube channel called "RedPill78" on July 21, 2006 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF CHRISTOPHER DOE uploaded 800 videos to the channel, which garnered more than 270,000 subscribers.  In the aggregate, the 800 videos were viewed approximately 48,764,950 times.  The channel was classified on YouTube as a news channel.  The channel had a history of a single strike.  On October 15, 2020, YouTube notified PLAINTIFF CHRISTOPHER DOE that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF CHRISTOPHER DOE to download the content contained on the "RedPill78" news channel.

19.     PLAINTIFF MATTHEW DOE created a YouTube channel called "Edge of Wonder" on December 6, 2017 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF MATTHEW DOE uploaded 251 videos to the channel, which garnered more than 467,000 subscribers.  In the aggregate, the 251 videos were viewed approximately 38,089,707 times.  The channel was classified on YouTube as an entertainment channel.  The channel had no history of strikes.  On October 15, 2020, YouTube notified PLAINTIFF MATTHEW DOE that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF MATTHEW DOE to download the content contained on the "Edge of Wonder" entertainment channel.

12

20.     PLAINTIFF POLLY ST. GEORGE created a YouTube channel called "Amazing Polly" on March 9, 2016 and entered into the TOS contract with YouTube. During the course of the contractual relationship, PLAINTIFF POLLY ST. GEORGE uploaded 387 videos to the channel, which garnered more than 375,000 subscribers.  In the aggregate, the 387 videos were viewed approximately 24,660,282 times.  The channel was classified on YouTube as a news channel.  The channel had no history of strikes. On October 15, 2020, YouTube notified PLAINTIFF POLLY ST. GEORGE that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF POLLY ST. GEORGE to download the content contained on the "Amazing Polly" news channel.

21.     PLAINTIFF SCOTT DEGROAT created a YouTube channel called "Woke Societies" in April of 2019 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF SCOTT DEGROAT uploaded approximately 300 videos to the channel, which garnered more than 108,000 subscribers.  In the aggregate, the approximately 300 videos were viewed over 4,500,000 times.  The channel had no history of strikes.  On October 15, 2020, YouTube notified PLAINTIFF SCOTT DEGROAT that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF SCOTT DEGROAT to download the content contained on the "Woke Societies" news channel.

22.     PLAINTIFF DAVID J. HAYES created a YouTube channel called "Praying Medic" in July 27, 2010 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF DAVID J. HAYES uploaded approximately 300 videos to the channel, which garnered more than 391,000 subscribers.  In the aggregate, the approximately 300 videos were viewed over 40 million times.  The channel had a history of single strike.  On October 15, 2020, YouTube notified DAVID J. HAYES that the account was suspended "due to repeated or severe violations of our Community Guidelines."  There was not

13

any notice, nor sufficient notice, to permit PLAINTIFF DAVID HAYES to download the content contained on the "Praying Medic" news channel.

23.     PLAINTIFF DANIEL LEE created a YouTube channel called "dnajlion7" on October 11, 2007 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF DANIEL LEE uploaded 2,652 videos to the channel, which garnered more than 113,000 subscribers.  In the aggregate, the 2,652 videos were viewed approximately 28,361,823 times. The channel was classified on YouTube as an education channel. The channel had no history of active strikes.  On October 15, 2020, YouTube notified PLAINTIFF DANIEL LEE that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF DANIEL LEE to download the content contained on the "dnajlion7" entertainment channel.

24.     PLAINTIFF DANIEL LEE created a YouTube channel called "Daniel Lee" on October 23, 2019 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF DANIEL LEE uploaded 84 videos to the channel, which garnered more than 30,300 subscribers.  In the aggregate, the 84 videos were viewed approximately 999,348 times. The channel had no history of active strikes. On October 15, 2020, YouTube notified PLAINTIFF DANIEL LEE that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF DANIEL LEE to download the content contained on the "Daniel Lee" channel.

25.     PLAINTIFF MISHEL McCUMBER created a YouTube channel called "DeceptionBytes" on July 31, 2011 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF MISHEL McCUMBER uploaded 1,030 videos to the channel, which garnered more than 69,200 subscribers.  In the aggregate, the 1,030 videos were viewed approximately 18,239,613 times.  The channel was classified on YouTube as a news channel.  The channel had a history of a single copyright strike.  YouTube never notified

14

1    PLAINTIFF MISHEL McCUMBER that the account was suspended or terminated; a user,

2    however, attempting to access the channel would see the following warning:  "due to repeated or

3    severe violations of our Community Guidelines."  YouTube removed the channel without any

4    notice to PLAINTIFF MISHEL MCCUMBER. There was not any notice, nor sufficient notice, to

5    permit PLAINTIFF MISHEL MCCUMBER to download the content contained on the

6    "DeceptionBytes" entertainment channel.

7            26.      PLAINTIFF JEFF PEDERSEN created a YouTube channel called

8    "InTheMatrixxx" on July 11, 2013 and entered into the TOS contract with YouTube.  During the

9    course of the contractual relationship, PLAINTIFF JEFF PEDERSEN uploaded 464 videos to the

10   channel, which garnered more than 76,900 subscribers.  In the aggregate, the 464 videos were

11   viewed approximately 4,667,407 times. The channel was classified on YouTube as a people

12   channel.  The channel had a few resolved warnings and strikes. On October 15, 2020, YouTube

13   notified PLAINTIFF JEFF PEDERSEN that the account was suspended "due to repeated or severe

14   violations of our Community Guidelines."  No advance notice was given.  There was not any

15   notice, nor sufficient notice, to permit PLAINTIFF JEFF PEDERSEN to download the content

16   contained on the "InTheMatrixxx" channel.

17           27.      PLAINTIFF JORDAN SATHER created a YouTube channel called "Destroying

18   the Illusion" on November 24, 2016 and entered into the TOS contract with YouTube.  During the

19   course of the contractual relationship, PLAINTIFF JORDAN SATHER uploaded 794 videos to

20   the channel, which garnered more than 238,000 subscribers.  In the aggregate, the 794 videos were

21   viewed approximately 30,050,517 times. The channel was classified on YouTube as a people

22   channel.  The channel had a history of one copyright strike.  On October 15, 2020, YouTube

23   notified PLAINTIFF JORDAN SATHER that the account was suspended "due to repeated or

24   severe violations of our Community Guidelines."  No advance notice was given.  There was not

25   any notice, nor sufficient notice, to permit PLAINTIFF JORDAN SATHER to download the

26   content contained on the "Destroying the Illusion" channel.

27           28.      PLAINTIFF JORDAN SATHER created a YouTube channel called "Destroying

28

15

the Illusion 2.0" and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF JORDAN SATHER uploaded 13 videos to the channel, which garnered more than 368,000 subscribers.  In the aggregate, the 13 videos were viewed approximately 11,758,130 times.  The channel had no history of strikes.  On October 15, 2020, YouTube notified PLAINTIFF JORDAN SATHER that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF JORDAN SATHER to download the content contained on the "Destroying the Illusion 2.0" channel.

29.     PLAINTIFF SARAH WESTALL created a YouTube channel called "Sarah Westall" on April 4, 2012 and entered into the TOS contract with YouTube.  During the course of the contractual relationship, PLAINTIFF SARAH WESTALL uploaded 665 videos to the channel, which garnered more than 125,000 subscribers.  In the aggregate, the 665 videos were viewed approximately 15,367,956 times.  The channel was classified on YouTube as a news channel.  The channel had a history of copyright strikes and a single guideline strike; however, 10 videos were previously removed without any warnings, notices or reasons given.  On October 15, 2020, YouTube notified PLAINTIFF SARAH WESTALL that the account was suspended "due to repeated or severe violations of our Community Guidelines."  No advance notice was given.  There was not any notice, nor sufficient notice, to permit PLAINTIFF SARAH WESTALL to download the content contained on the "Sarah Westall" channel.

30.     Recently, politicians from all areas of government have demanded that Big Tech, particularly Google and YouTube, take down content with which they disagree—i.e., content that they consider "harmful," "offensive," "conspiracy theories" and the like.  Since these demands began, YouTube creators and partners have been excised from the platform, most suddenly on or around October 15.

31.     Plaintiffs are aware that in the past, Plaintiffs who have alleged First Amendment violations against Defendants and other members of large social-media companies (collectively, "Big Tech") have lost because Big Tech is comprised of companies, i.e., they have been

16

COMPLAINT

considered private, not state, actors, whose actions are not constrained by First

Amendment concerns.  However, numerous state actors, as described in the next section

of this Complaint, have pressed Big Tech into their service to combat what those actors

consider to be "harmful" wrongthink on social media.  In <u>Blum v. Yaretsky</u>, 457 U.S. 991

(1982), the United States Supreme Court stated that state action may be pleaded,

presumed or proved where "there is a sufficiently close nexus between the State and the

challenged action of the regulated entity so that the action of the latter may be fairly

treated as that of the State itself."  The purpose of this requirement is to assure that

constitutional standards are invoked only when it can be said that the State is responsible

for the specific conduct of which the plaintiff complains.  Where, as in this case, the state

has exercised "coercive power or has provided such significant encouragement, either

overt or covert, that the choice must in law be deemed that of the state."

## <u>GOVERNMENT ACTORS ENCOURAGED, COERCED, AND THREATENED THE BIG TECH GIANTS AND THEIR TOP EXECUTIVES</u>

32.    <u>Representative Schiff's 2019 Threat:</u>  On February 14, 2019, Representative

Schiff sent a letter to Mr. Pichai, which is attached hereto as Exhibit  C and incorporated by

reference as if it were set forth fully herein ("Schiff 2019 Letter").  The Schiff 2019 Letter was

published on official letterhead in Representative Schiff's capacity as a Congressman, his

position on the Permanent Select Committee on Intelligence, and his position as an *ex officio*

member of the Committee on Appropriations.  The text of the Schiff 2019 Letter and a press

release announcing its existence were posted on Representative Schiff's official website and can

be found at https://schiff.house.gov/news/press-releases/schiff-sends-letter-to-google-facebook-

regarding-anti-vaccine-misinformation.  The Schiff 2019 Letter was published on official

Congressional letterhead.  In the 2019 Schiff Letter, Representative Schiff indicated that that he

had "discussed with [Mr. Pichar] in other contexts" that Google's algorithms "are not designed

to distinguish quality information from misinformation, and that the consequences of that are

particularly troubling for public health issues."  Congressman Schiff indicated that he was

"pleased to see YouTube's recent announcement that it will no longer recommend videos that violate its community guidelines, such as conspiracy theories or medically inaccurate videos, and ***encourage*** further action to be taken related to vaccine misinformation."  Representative Schiff also demanded that Google respond to numerous questions, menacingly "reminding" Mr. Pichar that "[a]s more Americans rely on your services as their primary source of information, it is vital that you take that responsibility with the seriousness it requires, and nowhere more so than in matters of public health and children's health."  <u>See</u> Exhibit C.  A few months later, at a July 16, 2019, hearing before the Senate Judiciary Committee on the issue of search-engine censorship, Google representative Karan Bhatia informed the Senators in attendance that Google had begun "targeting" anti-vaccination speech.

33.     <u>Representative Schiff's 2020 Demands:</u>  On April 29, 2020, in the wake of the COVID-19 pandemic, Representative Schiff sent a letter to Sundar Pichai and Susan Wojcicki. The letter is attached hereto as Exhibit D and incorporated by reference as if it were set forth in full herein ("Schiff 2020 Letter").  The Schiff 2020 Letter was published on official Congressional letterhead and signed by "Adam B. Schiff, Member of Congress" in his official capacity and as the Chairman of the Permanent Select Committee on Intelligence and an *ex officio* member of the Committee on Appropriations.  The Schiff 2020 Letter was also published on Representative Schiff's official Twitter account, @RepAdamSchiff, an account with more than 2.3 million followers.  It was "liked" by more than 12,700 other Twitter users and was directly retweeted more than 5,400 times; see https://twitter.com/RepAdamSchiff/status/1255902443390599169. The post on Twitter was retweeted by YouTube CEO Susan Wojcicki, see https://twitter.com/SusanWojcicki/status/1256304911446208512.  Ms. Wojcicki responded directly to Representative Schiff and acknowledged her company's "partnership" with Representative Schiff and other government actors or Congress itself: "Thanks for reaching out. @YouTube, we're working every day to protect people from misinformation and help them find authoritative information.  **We appreciate your partnership** and will continue to consult[2] with

_____

[2] The standard definitions of the term "consult" are to "have regard to," "ask the advice of

Members of Congress as we address the evolving issues around #COVID19."  (Emphasis added.)

See Exhibit E.  Ms. Wojcicki also appeared on CNN and acknowledged that YouTube would

comply with Representative Schiff's request—to "raise authoritative information"—and promised

that YouTube would identify, remove and delete videos that were "medically unsubstantiated" or

that disagreed with the World Health Organization.

34.     The Schiff 2020 Letter addressed the public health crisis and what Representative

Schiff described as the need for Americans "to receive the best information possible so that they

can keep themselves, their families and their communities healthy."  After providing examples of

content that the Congressman deemed "harmful medical information," he urged the letter's

recipients to take action as follows:

> Though the best protection is removing or downgrading harmful content before
> users engage with it, that is not always possible. As you are likely aware,
> Facebook recently announced plans to display messages to any users who have
> engaged with harmful coronavirus-related misinformation that has since been
> removed from the platform and connect them with resources from the World
> Health Organization. ***I urge you to adopt a similar practice for YouTube users***
> and others who engage with harmful information on your platform, to proactively
> inform them and direct them to authoritative, medically accurate resources. **While
> taking down harmful misinformation is a crucial step**, mitigating the harms
> from false content that is removed requires also ensuring that those users who
> accessed it while it was available have as high a likelihood of [sic] possible  of
> viewing the facts as well.

See Exhibit E.  On information and belief, the purpose and effect of the Schiff 2020 Letter

was to pressure Google/YouTube into doing Representative Schiff's bidding through the

veiled threat that attends a public directive issued by a powerful member of Congress with

significant power to institute and force the passage of laws to regulate Google/YouTube

and its subsidiaries in innumerable ways that would affect its business operations.

35.     Speaker Pelosi's Threat to Strip Big Tech of Section 230 Protections:

During a podcast with Silicon Valley journalist Kara Swisher, Speaker of the House

Nancy Pelosi made the following statement about CDA 230 immunity: "It is a gift to them

and I don't think that they are treating it with the respect that they should, and so I think

---

opinion of" or to "deliberate together," an act that occurs *before* a decision is made.  See
https://www.merriam-webster.com/dictionary/consult

19

1    that that could be a question mark and in jeopardy… I do think that for the privilege of 230, there

2    has to be a bigger sense of responsibility on it. And it is not out of the question that that could be

3    removed."

4         36.    <u>Speaker Pelosi's June 2020 Threat:</u>  On June 16, 2020, Speaker Pelosi participated

5    in an international online Georgetown University Institute on Data Democracy and Politics event

6    titled "Forum on COVID-19 Social Media Disinformation."  The forum was publicly

7    livestreamed on YouTube on June 16, 2020.  The forum's events included working groups whose

8    stated purpose was to combat "disinformation."  The participants included both government

9    officials and representatives from various social media platforms.  The event moderator described

10   Speaker Pelosi as a "very influential leader[]."  Speaker Pelosi stated, "The American people,

11   including social media platform employees, are demanding an end to the exploitation of the

12   public's health, financial security, and lives.  Congress, employees, advertisers, and the public

13   must work as one to shine a bright light on the division and the disinformation proliferating

14   online.  And together, we must send a message to social media executives. You will be held

15   accountable for your misconduct."

16        37.    <u>Introduction of House Resolution 1154:</u>  On August 25, 2020, a resolution was

17   introduced in the House of Representatives to condemn a "movement" that it sloppily referred to

18   "QAnon," which the resolution claimed consists of conspiracy theories that undermine the public

19   trust.  In reality, "Q" is the presumed author (or authors) of anonymous posts and links on

20   political issues of national importance and "QAnons" are people who read the posts and study the

21   information contained therein.  According to a survey reported on by *Forbes Magazine*, 56%

22   percent of Republicans believe that "QAnon" theory is "mostly or partly true" and 4% of

23   Democrats think the theory is "partly true."

24        38.    While conspiracy theories abound, particularly on today's fast-moving information

25   superhighway, never since McCarthyism have the government and its actors moved so quickly to

26   condemn and excise them from public debate.  From a historical perspective, many accounts of

27   current events that were once lambasted as outlandish conspiracy theories have proven to be true

28

20

and have been reported by legacy media as such.  Following are only a few "conspiracy theories" that turned out to be true:  (1) the U.S. Department of the Treasury poisoned alcohol during Prohibition and people died; (2) the U.S. Public Health Service lied about treating black men with syphilis for more than 40 years in the Tuskegee Syphilis Experiment; (3) more than 100 million Americans received a polio vaccine contaminated with a potential cancer-causing virus; (4) parts of the Gulf of Tonkin Incident, which led to the U.S. intervention in Vietnam, never happened; (5) the government tested the effects of LSD on unwitting American and Canadian citizens; (6) in 1974, the CIA secretly resurfaced a sunken Soviet submarine with three nuclear-armed ballistic missiles; (7) the U.S. government sold weapons to Iran, violating an embargo, and used the money to support Nicaraguan militants; and (8) a public-relations firm organized congressional testimony that propelled America's involvement in the Persian Gulf War.  See https://www.businessinsider.com/true-government-conspiracies-2013-12. Notwithstanding the fact that some ideas once dismissed as "conspiracy theories" have turned out to reflect historical truth, when it comes to ideas about current events that challenge the government, Congress, with YouTube as its partner, appears prepared to launch a second McCarthy era.  Is stifling the debate and characterizing divergent political views and research and commentary related to "conspiracy theories" what our Founders would have wanted?

39.      Types of Power Wielded by the State Actors:  Although Speaker Pelosi and Representative Schiff may not have the power to pass legislation on their own, they certainly wield influence sufficient to coerce and substantially encourage the Defendants and, on information and belief, have done so.  This power is wielded through not only inquiry letters and demand letters from Congress, such as Exhibits C and D  but also public statements such as those made by Speaker Pelosi that Big Tech will be held "accountable". Furthermore, both  Representative Schiff and Speaker Pelosi represent California, where all of the Defendants have their principal places of business.  In addition, the state actors

referenced above and Committees of Congress have the power to call the Defendants' executives before various committees and bodies of Congress to testify, as they did in 2018 and 2020, and did so again just last week.

40.     The Senate Demands Google CEO Appear to Testify on the Hill About Censorship:  As a demonstration of the power wielded by members of Congress over presumably private actors such as Google, on October 1, 2020, the Senate Commerce Committee voted to compel the testimony of the CEOs of Facebook, Google and Twitter to mark the start of a new Congressional war on what it characterizes as hate speech, misinformation and political bias on social media.  The Senate Commerce Committee authorized the issuance of subpoenas for Facebook CEO Mark Zuckerberg, Google CEO Sundar Pichai, and Twitter CEO Jack Dorsey to force them to appear at a planned hearing if they do not agree to do so voluntarily.  The Senate Committee indicated the testimony is needed to "to reveal the extent of influence that their companies have over American speech during a critical time in our democratic process," according to Sen. Roger Wicker, the Mississippi Republican who heads the committee.  In other words, while the Democratic-controlled House passed House Resolution 1154 encouraging censorship, the Republican-controlled Senate will be asking hard questions of Big Tech. Plaintiffs are at the heart of this political and constitutional debate.

41.     The Department of Justice Sued Google for Antitrust Violations:  On October 20, 2020, the Department of Justice, along with eleven State Attorneys General, sued Google for violating federal antitrust laws.  "Today, millions of Americans rely on the Internet and online platforms for their daily lives.  Competition in this industry is vitally important, which is why today's challenge against Google—the gatekeeper of the Internet—for violating antitrust laws is a monumental case both for the Department of Justice and for the American people," said Attorney General William Barr.

42.     The Passage of House Resolution 1154:  On October 2, 2020, the United States House of Representatives passed House Resolution 1154, the introduction of which is described above, entitled "Condemning QAnon and rejecting the conspiracy theories it promotes."  The

House Resolution is attached as Exhibit F. The record of Congressional actions with respect to H.R. 1154 are attached as Exhibit G.  In H.R. 1154, the House condemned "QAnon" and noted that "conspiracy theories" undermine trust in America's democratic institutions, encourage rejection of objective reality, and deepen our Nation's political polarization."  The House resolved to condemn "QAnon," "condemn groups and all other groups and ideologies … that contribute to the spread of unfounded conspiracy theories and that encourage Americans to destroy public and private property and attach law enforcement officers" and "urge[] all Americans … to seek information from authoritative sources and to engage in political debate from a common factual foundation."  There is no question that there is a legitimate existing public debate over what is "authoritative information" and whether it is legitimate to question or challenge politicians and government officials.  There is no question that Plaintiffs' speech and the rights of Americans to hear it is at the heart of this public debate that is ongoing in the halls of Congress.

43.     The fact that Congress, or at least the House of Representatives, has condemned political speech with which it does not agree in H.R. 1154 and that YouTube almost immediately purged Plaintiffs' content raises the strongest inference that YouTube acted at the direct behest and encouragement of the United States House of Representatives.

**INJUNCTIVE RELIEF**

44.     Plaintiffs are entitled to preliminary and permanent injunctions.  Defendants are acting and threatening to act under color of state law, both in a nexus with the government and in joint action with the government, to deprive Plaintiffs of their constitutional rights.  Plaintiffs will suffer irreparable injury and will continue to suffer a real and immediate threat of irreparable injury as a result of the continued censorship of their political speech on YouTube.  Plaintiffs have no plain, adequate, or speedy remedy at law.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## GENERAL ALLEGATIONS

A.       **Jurisdiction and Venue**

45.       This is a civil action seeking damages, declaratory relief, and injunctive relief under the laws of the United States, including but not limited to the First Amendment, the Equal Protection Clause, and 42 U.S.C. § 1983.  Plaintiffs also seek damages and injunctive relief under California state law, where not preempted by Federal law.

46.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 1367 (supplemental jurisdiction).

47.       Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

48.       This Court has personal jurisdiction over Defendants because all Defendants have "continuous, systematic" ties to California and/or their principal place of business is within this District.

49.       Venue in this District is proper because a substantial part of the acts and omissions giving rise to the claims occurred in this district and the parties have selected the Northern District of California pursuant to written contract, contained in their Terms of Service, which bind the parties.

B.       **The Parties**[3]

50.       PLAINTIFF JOHN DOE at all relevant times herein was a resident of Bakersfield, California.  PLAINTIFF JOHN DOE is the creator of the channel "JustInformed Talk," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channel.

---

[3]       Pursuant to Federal Rule of Civil Procedure 10(a), the DOE Plaintiffs and POLLY ST. GEORGE proceed anonymously.

51.     PLAINTIFF MICHAEL DOE at all relevant times herein was a resident of Stillwater, Minnesota.  PLAINTIFF MICHAEL DOE is the creator of channels "SGTreport" and "SGT Report *2*," which were on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channels.

52.     PLAINTIFF JAMES DOE at all relevant times herein was a resident of Wellington, Florida. PLAINTIFF JAMES DOE is the creator of the channel "X22Report," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channels.

53.     PLAINTIFF HENRY DOE at all relevant times herein was a resident of Rhode Island.  PLAINTIFF HENRY DOE is the creator of the channel "SpaceShot76," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channel.

54.     PLAINTIFF ROBERT DOE at all relevant times herein was a resident of Greenville, South Carolina.  PLAINTIFF ROBERT DOE is the creator of the channel "TRUreporting," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channel.

55.     PLAINTIFF CHRISTOPHER DOE at all relevant times herein was a resident of Lansing, Michigan, California.  PLAINTIFF CHRISTOPHER DOE is the creator of the channel "RedPill78," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channel.

56.     PLAINTIFF MATTHEW DOE at all relevant times herein was a resident of Flushing, New York. PLAINTIFF MATTHEW DOE is the creator of the channel "Edge of Wonder," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channel.

57.     PLAINTIFF POLLY ST. GEORGE at all relevant times herein was a resident of Kingston, Ontario.  PLAINTIFF POLLY ST. GEORGE is the creator of the

25

channel "Amazing Polly," which was on YouTube until October 15, 2020, when

Google/YouTube terminated or suspended the channel.

58.     PLAINTIFF SCOTT DEGROAT at all relevant times herein was a resident

of Campbell Hall, New York.  PLAINTIFF SCOTT DEGROAT is the creator of the channel

"Woke Societies" which was on YouTube until October 15, 2020, when Google/YouTube

terminated or suspended the channel.

59.     PLAINTIFF DAVID J HAYES at all relevant times herein was a resident of

Gilbert, Arizona.  PLAINTIF DAVID J. HAYES is the creator of the channel "Praying Medic"

which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended

the channel.

60.     PLAINTIFF DANIEL LEE at all relevant times herein was a resident of Juneau,

Alaska.  PLAINTIFF DANIEL LEE is the creator of the channels "dnajlion7" and "Daniel Lee"

which were on YouTube until October 15, 2020, when Google/YouTube terminated or suspended

the channel.

61.     PLAINTIFF MISHEL McCUMBER at all relevant times herein was a resident of

Baton Rouge, Louisiana.  PLAINTIFF MISHEL McCUMBER is the creator of the channel

"Deception Bytes," which was on YouTube until October 15, 202,0 when Google/YouTube

terminated or suspended the channel.

62.     PLAINTIFF JEFF PEDERSEN at all relevant times herein was a resident of Palm

City, Florida.  PLAINTIFF JEFF PEDERSEN is the creator of the channel "InTheMatrixxx

Bytes," which was on YouTube until October 15, 202,0 when Google/YouTube terminated or

suspended the channel.

63.     PLAINTIFF JORDAN SATHER at all relevant times herein was a resident of Gig

Harbor, Washington.  PLAINTIFF JORDAN SATHER is the creator of the channels "Destroying

the Illusion" and "Destroying the Illusion 2.0," which were on YouTube until October 15, 2020,

when Google/YouTube terminated or suspended the channel.

26

64.     PLAINTIFF SARAH WESTALL at all relevant times herein was a resident of Inner Grove Heights, Minnesota.  PLAINTIFF SARAH WESTALL is the creator of the channel "Sarah Westall," which was on YouTube until October 15, 2020, when Google/YouTube terminated or suspended the channel.

65.     Defendant Google, LLC, is a Delaware corporation with its principal place of business in Mountain View, California.

66.     Defendant YouTube, LLC is a Delaware limited liability company with its principal place of business in San Mateo, California.

67.     Defendants DOES 1 through 5 are responsible in some manner for the events and happenings herein alleged, as well as for the damages alleged.

68.     DOES 6 through 10 are responsible in some manner for the events and happenings herein alleged, as well as for the damages alleged.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

**(By Plaintiff JOHN DOE Against Defendant YouTube, LLC and Does 1 Through 10)**

69.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

70.     A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

27

71. Plaintiff JOHN DOE did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff JOHN DOE was excused from doing them.

72. Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3) failed to give Plaintiff JOHN DOE notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

73. Plaintiff JOHN DOE has been harmed by Defendant YouTube's failure to comply with the contract.

74. Plaintiff JOHN DOE is entitled to specific performance of the contract.

75. Plaintiff JOHN DOE is entitled to injunctive relief.

76. Plaintiff JOHN DOE is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff MICHAEL DOE Against Defendant YouTube, LLC and Does 1 Through 10)

77. Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

78. A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

28

79.     Plaintiff MICHAEL DOE did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff MICHAEL DOE was excused from doing them.

80.     Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3) failed to give Plaintiff MICHAEL DOE notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

81.     Plaintiff MICHAEL DOE has been harmed by Defendant YouTube's failure to comply with the contract.

82.     Plaintiff MICHAEL DOE is entitled to specific performance of the contract.

83.     Plaintiff MICHAEL DOE is entitled to injunctive relief.

84.     Plaintiff MICHAEL DOE is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

**(By Plaintiff JAMES DOE Against Defendant YouTube, LLC and Does 1 Through 10)**

85.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

86.     A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

29

87.     Plaintiff JAMES DOE did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff JAMES DOE was excused from doing them.

88.     Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3) failed to give Plaintiff JAMES DOE notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

89.     Plaintiff JAMES DOE has been harmed by Defendant YouTube's failure to comply with the contract.

90.     Plaintiff JAMES DOE is entitled to specific performance of the contract.

91.     Plaintiff JAMES DOE is entitled to injunctive relief.

92.     Plaintiff JAMES DOE is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

## FOURTH CLAIM FOR RELIEF

**(Breach of Contract)**

**(By Plaintiff HENRY DOE Against Defendant YouTube, LLC and Does 1 Through 10)**

93.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

94.     A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

95.     Plaintiff HENRY DOE did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff HENRY DOE was excused from doing them.

96.     Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3) failed to give Plaintiff HENRY DOE notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

97.     Plaintiff HENRY DOE has been harmed by Defendant YouTube's failure to comply with the contract.

98.     Plaintiff HENRY DOE is entitled to specific performance of the contract.

99.     Plaintiff HENRY DOE is entitled to injunctive relief.

100.     Plaintiff HENRY DOE is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

### FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff ROBERT DOE Against Defendant YouTube, LLC and Does 1 Through 10)

101.   Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

102.   Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

103.   A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's

31

1  Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension

2  with sufficient time for them to download content.

3      104.    Plaintiff ROBERT DOE did all, or substantially all, of the significant things that

4  the contract required him to do; alternatively, Plaintiff ROBERT DOE was excused from doing

5  them.

6      105.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give

7  the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3) failed to

8  give Plaintiff ROBERT DOE notice sufficient to allow him to download his content; and

9  (4) failed to provide the appeals process it promised.

10      106.    Plaintiff ROBERT DOE has been harmed by Defendant YouTube's failure to

11  comply with the contract.

12      107.    Plaintiff ROBERT DOE is entitled to specific performance of the contract.

13      108.    Plaintiff ROBERT DOE is entitled to injunctive relief.

14      109.    Plaintiff ROBERT DOE is also entitled to his costs of suit and attorney fees

15  pursuant to the Terms of Service.

16  **SIXTH CLAIM FOR RELIEF**

17  **(Breach of Contract)**

18  **(By Plaintiff CHRISTOPHER DOE Against Defendant YouTube, LLC**

19  **and Does 1 Through 10)**

20      110.    Plaintiffs incorporate and reallege the allegations contained in the preceding

21  paragraphs as if set forth in full herein.

22      111.    Plaintiffs incorporate and reallege the allegations contained in the preceding

23  paragraphs as if set forth in full herein.

24      112.    A valid contract, to wit, YouTube's Terms of Service for content creators, exists

25  between the parties; that contract can be found at

26  https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter

27  alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged,

28

32

stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

113.    Plaintiff CHRISTOPHER DOE did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff CHRISTOPHER DOE was excused from doing them.

114.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff CHRISTOPHER DOE notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

115.    Plaintiff CHRISTOPHER DOE has been harmed by Defendant YouTube's failure to comply with the contract.

116.    Plaintiff CHRISTOPHER DOE is entitled to specific performance of the contract.

117.    Plaintiff CHRISTOPHER DOE is entitled to injunctive relief.

118.    Plaintiff CHRISTOPHER DOE is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

### SEVENTH CLAIM FOR RELIEF

**(Breach of Contract)**

**(By Plaintiff MATTHEW DOE Against Defendant YouTube, LLC**

**and Does 1 Through 10)**

110.  Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

111.  Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

33

COMPLAINT

1        112.   A valid contract, to wit, YouTube's Terms of Service for content creators, exists

2    between the parties; that contract can be found at

3    https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter

4    alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged,

5    stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels

6    unless it fit into one of the three reasons for account termination or suspension; (4) allow the

7    posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5)

8    notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to

9    download content.

10        113.   Plaintiff MATTHEW DOE did all, or substantially all, of the significant things

11    that the contract required him to do; alternatively, Plaintiff MATTHEW DOE was excused from

12    doing them.

13        114.   Defendant YouTube failed to comply with the contract in that it: (1) failed to give

14    the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to

15    give Plaintiff MATTHEW notice sufficient to allow him to download his content; and (4) failed

16    to provide the appeals process it promised.

17        115.   Plaintiff MATTHEW DOE has been harmed by Defendant YouTube's failure to

18    comply with the contract.

19        116.   Plaintiff MATTHEW DOE is entitled to specific performance of the contract.

20        117.   Plaintiff MATTHEW DOE is entitled to injunctive relief.

21        118.   Plaintiff MATTHEW DOE is also entitled to his costs of suit and attorney fees

22    pursuant to the Terms of Service.

23

24

25

26

27

28

### EIGHTH CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff POLLY ST. GEORGE Against Defendant YouTube, LLC

### and Does 1 Through 10)

119.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

120.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

121.    A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

122.    Plaintiff POLLY ST. GEORGE did all, or substantially all, of the significant things that the contract required her to do; alternatively, Plaintiff POLLY ST. GEORGE was excused from doing them.

123.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff POLLY ST. GEORGE notice sufficient to allow her to download her content; and (4) failed to provide the appeals process it promised.

124.    Plaintiff POLLY ST. GEORGE has been harmed by Defendant YouTube's failure to comply with the contract.

125.    Plaintiff POLLY ST. GEORGE is entitled to specific performance of the contract.

126.    Plaintiff POLLY ST. GEORGE is entitled to injunctive relief.

127.    Plaintiff POLLY ST. GEORGE is also entitled to her costs of suit and attorney fees pursuant to the Terms of Service.

## NINTH CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff SCOTT DEGROAT Against Defendant YouTube, LLC

### and Does 1 Through 10)

128.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

129.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

130.    A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

131.    Plaintiff SCOTT DEGROAT did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff SCOTT DEGROAT was excused from doing them.

132.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to

36

give Plaintiff SCOTT DEGROAT notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

133.    Plaintiff SCOTT DEGROAT has been harmed by Defendant YouTube's failure to comply with the contract.

134.    Plaintiff SCOTT DEGROAT is entitled to specific performance of the contract.

135.    Plaintiff SCOTT DEGROAT is entitled to injunctive relief.

136.    Plaintiff SCOTT DEGROAT is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

**TENTH CLAIM FOR RELIEF**

**(Breach of Contract)**

**(By Plaintiff DAVID J. HAYES Against Defendant YouTube, LLC**

**and Does 1 Through 10)**

137.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

138.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

139.    A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

140.     Plaintiff DAVID J. HAYES did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff DAVIDF J. HAYES was excused from doing them.

141.     Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff DAVID J. HAYES notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

142.     Plaintiff DAVID J. HAYES has been harmed by Defendant YouTube's failure to comply with the contract.

143.     Plaintiff DAVID J. HAYES is entitled to specific performance of the contract.

144.     Plaintiff DAVID J. HAYES is entitled to injunctive relief.

Plaintiff DAVID J. HAYES is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

## ELEVENTH CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff DANIEL LEE Against Defendant YouTube, LLC

### and Does 1 Through 10)

145.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

146.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

147.     A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the

38

posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

148.   Plaintiff DANIEL LEE did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff DANIEL LEE was excused from doing them.

149.   Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff DANIEL LEE notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

150.   Plaintiff DANIEL LEE has been harmed by Defendant YouTube's failure to comply with the contract.

151.   Plaintiff DANIEL LEE is entitled to specific performance of the contract.

152.   Plaintiff DANIEL LEE is entitled to injunctive relief.

153.   Plaintiff DANIEL LEE is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

## TWELFTH CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff MISHEL McCUMBER Against Defendant YouTube, LLC and Does 1 Through 10)

154.   Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

155.   Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

156.   A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do,

39

inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

157.    Plaintiff MISHEL McCUMBER did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff MISHEL McCUMBER was excused from doing them.

158.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff MISHEL McCUMBER notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

159.    Plaintiff  MISHEL McCUMBER has been harmed by Defendant YouTube's failure to comply with the contract.

160.    Plaintiff MISHEL McCUMBER is entitled to specific performance of the contract.

161.    Plaintiff MISHEL McCUMBER is entitled to injunctive relief.

162.    Plaintiff MISHEL McCUMBER is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

## THIRTEENTH CLAIM FOR RELIEF

### (Breach of Contract)

### (By Plaintiff JEFF PEDERSEN Against Defendant YouTube, LLC
### and Does 1 Through 10)

163.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

164.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

165.    A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.   In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

166.    Plaintiff JEFF PEDERSEN did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff JEFF PEDERSEN was excused from doing them.

167.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff JEFF PEDERSEN notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

168.    Plaintiff JEFF PEDERSEN has been harmed by Defendant YouTube's failure to comply with the contract.

169.    Plaintiff JEFF PEDERSEN is entitled to specific performance of the contract.

170.    Plaintiff JEFF PDERSON is entitled to injunctive relief.

171.    Plaintiff JEFF PEDERSEN is also entitled to his costs of suit and attorney fees pursuant to the Terms of Service.

**FOURTEENTH CLAIM FOR RELIEF**

**(Breach of Contract)**

**(By Plaintiff JORDAN SATHER Against Defendant YouTube, LLC**

**and Does 1 Through 10)**

172.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

173.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

174.    A valid contract, to wit, YouTube's Terms of Service for content creators, exists between the parties; that contract can be found at https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do, inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or terminate the channels unless it fit into one of the three reasons for account termination or suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or suspension with sufficient time for them to download content.

175.    Plaintiff JORDAN SATHER did all, or substantially all, of the significant things that the contract required him to do; alternatively, Plaintiff JORDAN SATHER was excused from doing them.

176.    Defendant YouTube failed to comply with the contract in that it: (1) failed to give the advance notice; (2) terminated and suspended Plaintiff's channel without cause; (3)  failed to give Plaintiff JORDAN SATHER notice sufficient to allow him to download his content; and (4) failed to provide the appeals process it promised.

177.    Plaintiff JORDAN SATHER has been harmed by Defendant YouTube's failure to comply with the contract.

178.    Plaintiff JORDAN SATHER is entitled to specific performance of the contract.

1    179.    Plaintiff JORDAN SATHER is entitled to injunctive relief.

2    180.    Plaintiff JORDAN SATHER is also entitled to his costs of suit and attorney fees

3    pursuant to the Terms of Service.

4    **FIFTEENTH CLAIM FOR RELIEF**

5    **(Breach of Contract)**

6    **(By Plaintiff SARAH WESTALL Against Defendant YouTube, LLC**

7    **and Does 1 Through 10)**

8    181.    Plaintiffs incorporate and reallege the allegations contained in the preceding

9    paragraphs as if set forth in full herein.

10    182.    Plaintiffs incorporate and reallege the allegations contained in the preceding

11    paragraphs as if set forth in full herein.

12    183.    A valid contract, to wit, YouTube's Terms of Service for content creators,

13    exists between the parties; that contract can be found at

14    https://www.youtube.com/static?template=terms.  In the contract, YouTube agreed to do,

15    inter alia, the following things:  (1) inform Plaintiffs when one of their videos or channels

16    was flagged, stricken, or taken down; (2) provide an appeals process; (3) not suspend or

17    terminate the channels unless it fit into one of the three reasons for account termination or

18    suspension; (4) allow the posting of Plaintiffs' videos unless they violated YouTube's

19    Community Guidelines; and (5) notify the Plaintiffs in advance of any termination or

20    suspension with sufficient time for them to download content.

21    184.    Plaintiff SARAH WESTALL did all, or substantially all, of the significant

22    things that the contract required her to do; alternatively, Plaintiff SARAH WESTALL was

23    excused from doing them.

24    185.    Defendant YouTube failed to comply with the contract in that it: (1) failed to

25    give the advance notice; (2) terminated and suspended Plaintiff's channel without cause;

26    (3)  failed to give Plaintiff SARAH WESTALL notice sufficient to allow her to download

27    her content; and (4) failed to provide the appeals process it promised.

28

43

186.     Plaintiff SARAH WESTALL has been harmed by Defendant YouTube's failure to comply with the contract.

187.     Plaintiff SARAH WESTALL is entitled to specific performance of the contract.

188.     Plaintiff SARAH WESTALL is entitled to injunctive relief.

189.     Plaintiff SARAH WESTALL is also entitled to her costs of suit and attorney fees pursuant to the Terms of Service.

**SIXTEENTH CLAIM FOR RELIEF**

**(Breach of the Covenant of Good Faith and Fair Dealing)**

**(By All Plaintiffs Against Defendant YouTube LLC and Does 1 through 10)**

190.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if set forth in full herein.

191.     Plaintiffs and Defendant entered into a contract consisting of the Terms of Service.

192.     Plaintiffs did all, or substantially all of the significant things that the contract required them to do, or they were excused from having to do those things.

193.     All conditions required for Defendant's performance had occurred.

194.     Defendant unfairly interfered with Plaintiffs' right to receive the benefits of the contract by, *inter alia*, taking down Plaintiffs' videos and channels without notice.

195.     Defendant also unfairly interfered with Plaintiffs' right to receive the benefits of the contract by invoking a unilateral right to amend the contract in a such a manner as to frustrate its purpose.

196.     Plaintiffs are entitled to injunctive relief.

197.     Plaintiffs are also entitled to their costs of suit.

**SEVENTEENTH CLAIM FOR RELIEF**

**(Freedom of Speech – First Amendment)**

(By All Plaintiffs Against All Defendants)

198.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if set forth in full herein.

44

199.    The First Amendment to the United States Constitution protects the right to free speech.

200.    By reason of the speech restrictions set forth above, including but not limited to the removal of Plaintiffs' news and political videos, Defendants, encouraged and coerced under color of law by government actors, have deprived Plaintiffs of their right to engage in a protected speech in violation of the Free Speech Clause of the First Amendment in that Defendants are preventing Plaintiffs from expressing a message based on its content and viewpoint, thereby denying the use of a forum to those whose views various government actors find unacceptable.  Alternatively, Defendants have deprived Plaintiffs' American viewers of their right to hear Plaintiffs' views.

201.    The restriction on Plaintiffs' speech is content- and viewpoint-based in violation of the Free Speech Clause of the First Amendment.

202.    Defendants' true purpose for adopting the conduct at issue here was to silence the viewpoints expressed by Plaintiffs' speech.  Consequently, Defendants' true purpose for adopting the resolution was to silence disfavored viewpoints in violation of the Free Speech Clause of the First Amendment to the United States Constitution.

203.    YouTube acts as a state actor because it has moved to ban videos by Plaintiffs (and videos expressing similar views by other YouTube content creators) based on the encouragement, coercion, and/or threats of powerful government officials.  Accordingly, YouTube performs an exclusively and traditionally public function by regulating free speech within a public forum.  Accordingly, speech cannot be arbitrarily, unreasonably, or discriminatorily excluded, regulated, or restricted on the basis of viewpoint or the identity of the speaker.

204.    Plaintiffs' videos, which are designed to educate the public, constitute expressive speech and activity protected by the First Amendment to the United States Constitution.

205.     YouTube has restricted Plaintiffs' speech and expressive conduct based on subjective, vague, and overbroad criteria that give YouTube unfettered and unbridled discretion to censor speech for any or no reason, no matter how arbitrary or capricious. Those criteria further fail to convey a sufficiently definite warning to Plaintiffs and the public as to what is prohibited or restricted.  YouTube's adoption and application of those criteria on its face violates Plaintiffs' right to free speech as guaranteed by the First Amendment.  Further, that invidious potential has been borne out and evidenced by YouTube's application of its policies and procedures to censor Plaintiffs, who do not know what they have done wrong, what they could do differently, or how they could change their videos so that they could be reinstated.

206.     YouTube also applies its censorship criteria, including the Terms of Use and Community Guidelines, as a pretext to censor and restrict Plaintiffs' speech based on both on the content of the speech (pursuant to the government's directions) and Plaintiffs' political viewpoints.  YouTube's application of its criteria and corresponding restraints on Plaintiffs' speech is arbitrary and capricious and/or is based on political, religious, or other animus towards the identity and viewpoints of the speaker, not the actual content of the speech.

207.     Further, Plaintiffs are so restrained and punished because YouTube prevents their fans and followers from accessing political speech and commenting on that political speech. Accordingly, YouTube's actions impinge on and violate Plaintiffs' and their audiences' right to free association and assembly.

208.     When they censored Plaintiffs' speech, Defendants were acting pursuant to government actions and threats against them, express or implied, that compelled them to take a particular action, to wit, to take down YouTube videos that contradicted the views of powerful government officials.

209.     In the alternative, when they censored Plaintiffs' speech, Defendants were acting jointly with the government to take down YouTube videos that contradicted the views of powerful government officials.

46

210.    The material taken down by Defendants was not obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable.

211.    When Defendants took down Plaintiffs' material, they were not acting in good faith.

212.    No compelling, significant, or legitimate reason justifies Defendants' actions. Even if such interests did exist to justify YouTube's restriction and demonetization rules generally, the restrictions imposed on Plaintiffs' speech are not narrowly or reasonably tailored to further such interests, because they sweep within their ambit political speech that does not violate YouTube's rules in any way.  Given Google/YouTube's monopolistic control over search results, including both video search results and online video streaming, Plaintiffs have no alternative if they wish to have a reasonable opportunity to reach their intended audience.

213.    YouTube's discriminatory policies and application of those policies are not viewpoint neutral, are unreasonable in time, place, and manner, and are unreasonable in relation to the nature, purpose, and use of the forum.  They impose an unreasonable prior restraint on Plaintiffs' protected political speech, motivated by impermissible discrimination against Plaintiffs' viewpoint.

214.    YouTube's wrongful actions were taken with oppression, fraud, malice and/or are arbitrary and capricious, and as part of its normal course of business, effectuated through both the Google/YouTube algorithms and human agents.  Furthermore, YouTube acted with the intent to deprive Plaintiffs and their viewers of their rights under the United States constitution.

215.    As a direct and proximate result of Defendants' violations of clearly established law under the First Amendment, Plaintiffs have suffered, and continues to suffer, immediate and irreparable injury in fact, including lost income, reduced viewership, and damage to brand, reputation, and goodwill, for which there exists no adequate remedy at law.

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs ask this Court:

3

A)    To preliminarily and permanently enjoin Defendants' continued violation of

4

YouTube's TOS and require them to restore Plaintiffs' YouTube channels and videos to the state

5

they were in on October 15, 2020;

6

B)    To preliminarily and permanently enjoin Plaintiffs' speech restriction and its

7

application to Plaintiffs' speech as set forth in this Complaint;

8

C)    To award Plaintiffs their reasonable attorney fees, costs and expenses; and

9

D)    To grant such other and further relief as this Court should find just and proper.

10

11

Dated: October 26, 2020                          ARMENTA & SOL, PC

12

13                                                            */s M. Cris Armenta*

By: _____

14                                                            M. Cris Armenta

15                                                            Attorneys for Plaintiffs JOHN DOE, MICHAEL
DOE, JAMES DOE, HENRY DOE, ROBERT

16                                                            DOE, CHRISTOPHER DOE, MATTHEW DOE,
POLLY ST. GEORGE, SCOTT DEGROAT

17                                                            DAVID J. HAYES, DANIEL LEE, MISHEL
McCUMBER, JEFF PEDERSEN, JORDAN

18                                                            SATHER, SARAH WESTALL

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

2 **REQUEST FOR JURY TRIAL**

3      Plaintiffs hereby request a trial by jury.

4      Dated: October 26, 2020                ARMENTA & SOL, PC

5

6                                        */s M. Cris Armenta*

                              By:  _____
7                                   M. Cris Armenta
                                    Attorneys for Plaintiffs JOHN DOE, MICHAEL
8                                   DOE, JAMES DOE, HENRY DOE, ROBERT
                                    DOE, CHRISTOPHER DOE, MATTHEW DOE,
9                                   POLLY ST. GEORGE, SCOTT DEGROAT,
                                    DAVID J. HAYES, DANIEL LEE, MISHEL
10                                  McCUMBER, JEFF PEDERSEN, JORDAN
                                    SATHER, SARAH WESTALL
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

https://support.google.com/youtube/answer/2802268?hl=en   Go

**190 captures**
30 Mar 2015 - 20 Oct 2020

SEP **OCT** NOV
◀ **15** ▶
**2019** **2020** 2021

▼ About this capture

# Harassment and cyberbullying policy



💡 The safety of our creators, viewers, and partners is our highest priority – and we look to each of you to help us protect this unique and vibrant community. It's important you understand our Community Guidelines, and the role they play in our shared responsibility to keep YouTube safe. **Please take the time to carefully read the policy below**. You can also check out this page for a full list of our guidelines.

We recently announced some updates on our harassment policy to better protect creators and users. The policy below has been updated to reflect these changes.

Content that threatens individuals is not allowed on YouTube. We also do not allow content that targets an individual with prolonged or malicious insults based on intrinsic attributes, including their protected group status or physical traits.

https://support.google.com/youtube/answer/2802268?hl=en   Go

190 captures
30 Mar 2015 - 20 Oct 2020

SEP **OCT** NOV
**15**
2019 **2020** 2021

About this capture




Guidelines are available here. If you've found multiple videos or comments that you would like to report, you can report the channel. For tips and best practices to stay safe, keep your account secure, and protect your privacy, check out this Help Center article.

If specific threats are made against you and you feel unsafe, report it directly to your local law enforcement agency.

## What this means for you

### If you're posting content

Don't post content on YouTube if it fits any of the descriptions noted below.

- Content that features prolonged name calling or malicious insults (such as racial slurs) based on their intrinsic attributes. These attributes include their protected group status, physical attributes, or their status as a survivor of sexual assault, domestic abuse, child abuse etc.
- Content uploaded with the intent to shame, deceive or insult a minor. A minor is defined as a person under the legal age of majority. This usually means anyone younger than 18 years old, but the age of a minor might vary by country.

Other types of content that violate this policy 

## Exceptions

We may allow content that includes harassment if the primary purpose is educational, documentary, scientific, or artistic in nature. This is not a free pass to harass someone. Some examples include:

- **Debates related to high-profile officials or leaders**: Content featuring debates or discussions of topical issues concerning people who have positions of power, like high-profile government officials or CEOs of major multinational corporations.
- **Scripted performances**: Insults made in the context of an artistic medium such as scripted satire, stand up comedy, or music (e.g. a diss track). Note: This is not a free pass to harass someone and claim "I was joking."
- **Harassment education or awareness**: Content that features actual or simulated harassment for documentary purposes or with willing participants (e.g. actors) to combat cyberbullying or raise awareness.

Note: We take a harder line on content that maliciously insults someone based on their protected group status, regardless of whether or not they are a high-profile person.

## Monetization and other penalties

https://support.google.com/youtube/answer/2802268?hl=en    Go    SEP  OCT  NOV

190 captures
30 Mar 2015 - 2 Oct 2020    2019  **15**  2021
                                  **2020**

About this capture




...edly encourages abusive audience behavior.

- Repeatedly targets, insults and abuses an identifiable individual based on their intrinsic attributes across multiple uploads.
- Exposes an individual to risks of physical harm based on the local social or political context.
- Creates content that harms the YouTube ecosystem by persistently inciting hostility between creators for personal financial gain.

## Examples

Here are some examples of content that's not allowed on YouTube:

- Repeatedly showing pictures of someone and then making statements like "Look at this creature's teeth, they're so disgusting!", with similar commentary targeting intrinsic attributes throughout the video.
- Targeting an individual based on their membership in a **protected group**, such as by saying: "Look at this filthy [slur targeting a protected group], I wish they'd just get hit by a truck."
- Using an extreme insult to dehumanize an individual based on their intrinsic attributes. For example: "Look at this dog of a woman! She's not even a human being — she must be some sort of mutant or animal!"
- Depicting an identifiable individual being murdered, seriously injured, or engaged in a graphic sexual act without their consent.
- Accounts dedicated entirely to focusing on maliciously insulting an identifiable individual.

**More Examples** 

- Targeting an individual based on their intrinsic attributes to wish for their death or serious injury, for example "I wish someone would just bring a hammer down on that [Member of a Protected Group]'s face."
- Threatening someone's physical safety. This includes implied threats like "when I see you next, things will end badly for you," explicit threats like "when I see you on Saturday I'm going to punch you in the face," or implying violence by saying things such as "You better watch out" while brandishing a weapon.
- Posting an individual's nonpublic personal identifying information like a phone number, home address, or email to direct abusive attention or traffic toward them. For example: "I got a hold of their phone number, keep on calling and leaving messages until they pick up!"
- "Raiding" or directing malicious abuse to identifiable individuals through in-game voice chat or messages during a stream.
- Directing users toward a YouTuber's comment section for  malicious abuse. For example: "everyone needs to go over to this person's channel right now and just go crazy, let them know how much we want them to die."

https://support.google.com/youtube/answer/2802268?hl=en [Go]

190 captures
30 Mar 2015 - 20 Oct 2020

- Zooming in on prolongedly focused emphasis on the breasts, buttocks or genital area of an identifiable individual for the purposes of degrading, objectifying, or sexualizing.
- Video game content which has been developed or modified ("modded") to promote violence or hatred against an individual with the attributes noted above.

Please remember these are just some examples, and don't post content if you think it might violate this policy.

# What happens if content violates this policy

If your content violates this policy, we'll remove the content and send you an email to let you know. If this is your first time violating our Community Guidelines, you'll get a warning with no penalty to your channel. If it's not, we'll issue a strike against your channel. If you get 3 strikes, your channel will be terminated. You can learn more about our strikes system here.

We may also terminate your channel or account for repeated violations of the Community Guidelines or Terms of Service, as well as due to a single case of severe abuse, or when the channel is dedicated to a policy violation. You can learn more about channel or account terminations here.

## ▶ Visit Creator Academy for more

Would you rather learn about our Community Guidelines through videos and quizzes? Check out our Creator Academy course.

⚠ Give feedback about this article

**Was this helpful?**

[ Yes ]   [ No ]

# EXHIBIT B

https://support.google.com/youtube/answer/2802268?hl=en

190 captures
30 Mar 2015 - 20 Oct 2020

SEP **OCT** NOV
◀ **17** ▶
2019 **2020** 2021

About this capture

# Harassment and cyberbullying policy

💡 The safety of our creators, viewers, and partners is our highest priority – and we look to each of you to help us protect this unique and vibrant community. It's important you understand our Community Guidelines, and the role they play in our shared responsibility to keep YouTube safe. **Please take the time to carefully read the policy below**. You can also check out this page for a full list of our guidelines.

We recently announced some updates on our harassment policy to better protect creators and users. The policy below has been updated to reflect these changes.

Content that threatens individuals is not allowed on YouTube. We also do not allow content that targets an individual with prolonged or malicious insults based on intrinsic attributes, including their protected group status or physical traits.

https://support.google.com/youtube/answer/2802268?hl=en   Go

190 captures
30 Mar 2015 - 20 Oct 2020

SEP **OCT** NOV
◀ **17** ▶
**2019** **2020** 2021




▼ About this capture

Guidelines are available here. If you've found multiple videos or comments that you would like to report, you can report the channel. For tips and best practices to stay safe, keep your account secure, and protect your privacy, check out this Help Center article.

If specific threats are made against you and you feel unsafe, report it directly to your local law enforcement agency.

## What this means for you

### If you're posting content

Don't post content on YouTube if it fits any of the descriptions noted below.

- Content that features prolonged name calling or malicious insults (such as racial slurs) based on their intrinsic attributes. These attributes include their protected group status, physical attributes, or their status as a survivor of sexual assault, domestic abuse, child abuse etc.
- Content uploaded with the intent to shame, deceive or insult a minor. A minor is defined as a person under the legal age of majority. This usually means anyone younger than 18 years old, but the age of a minor might vary by country.

Other types of content that violate this policy                                    

## Exceptions

We may allow content that includes harassment if the primary purpose is educational, documentary, scientific, or artistic in nature. This is not a free pass to harass someone. Some examples include:

- **Debates related to high-profile officials or leaders**: Content featuring debates or discussions of topical issues concerning people who have positions of power, like high-profile government officials or CEOs of major multinational corporations.
- **Scripted performances**: Insults made in the context of an artistic medium such as scripted satire, stand up comedy, or music (e.g. a diss track). Note: This is not a free pass to harass someone and claim "I was joking."
- **Harassment education or awareness**: Content that features actual or simulated harassment for documentary purposes or with willing participants (e.g. actors) to combat cyberbullying or raise awareness.

Note: We take a harder line on content that maliciously insults someone based on their protected group status, regardless of whether or not they are a high-profile person.

## Monetization and other penalties

https://support.google.com/youtube/answer/2802268?hl=en   Go

190 captures
30 Mar 2015 - 20 Oct 2020

SEP  OCT  NOV
◀ 17 ▶
2019  2020  2021

About this capture

...edly encourages abusive audience behavior.

- ...dly targets, insults and abuses an identifiable individual based on their intrinsic attributes across multiple uploads.
- Exposes an individual to risks of physical harm based on the local social or political context.
- Creates content that harms the YouTube ecosystem by persistently inciting hostility between creators for personal financial gain.

## Examples

Here are some examples of content that's not allowed on YouTube:

- Repeatedly showing pictures of someone and then making statements like "Look at this creature's teeth, they're so disgusting!", with similar commentary targeting intrinsic attributes throughout the video.
- Targeting an individual based on their membership in a protected group, such as by saying: "Look at this filthy [slur targeting a protected group], I wish they'd just get hit by a truck."
- Targeting an individual and making claims they are involved in human trafficking in the context of a harmful conspiracy theory where the conspiracy is linked to direct threats or violent acts.
- Using an extreme insult to dehumanize an individual based on their intrinsic attributes. For example: "Look at this dog of a woman! She's not even a human being — she must be some sort of mutant or animal!"
- Depicting an identifiable individual being murdered, seriously injured, or engaged in a graphic sexual act without their consent.
- Accounts dedicated entirely to focusing on maliciously insulting an identifiable individual.

More Examples ⌄

## What happens if content violates this policy

If your content violates this policy, we'll remove the content and send you an email to let you know. If this is your first time violating our Community Guidelines, you'll get a warning with no penalty to your channel. If it's not, we'll issue a strike against your channel. If you get 3 strikes, your channel will be terminated. You can learn more about our strikes system here.

We may also terminate your channel or account for repeated violations of the Community Guidelines or Terms of Service, as well as due to a single case of severe abuse, or when the channel is dedicated to a policy violation. You can learn more about channel or account terminations here.

https://support.google.com/youtube/answer/2802268?hl=en    Go

190 captures
30 Mar 2015 - 20 Oct 2020

SEP  **OCT**  NOV
◀  **17**  ▶
2019  **2020**  2021

About this capture

Would you rather learn about our Community Guidelines through videos and quizzes? Check out our Creator Academy course.

⚠ Give feedback about this article

---

**Was this helpful?**

Yes        No

# EXHIBIT C

PERMANENT SELECT
COMMITTEE ON INTELLIGENCE
CHAIRMAN

COMMITTEE ON APPROPRIATIONS
EX-OFFICIO MEMBER



2269 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515

245 EAST OLIVE AVENUE, SUITE 200
BURBANK, CA 91502

@RepAdamSchiff • schiff.house.gov

## ADAM B. SCHIFF
MEMBER OF CONGRESS • 28TH DISTRICT, CALIFORNIA

February 14, 2019

Sundar Pichai
Chief Executive Officer
Google
1600 Amphitheater Parkway
Mountain View, CA 94043

Dear, Mr. Pichai:

As more Americans use the Internet and social media platforms as their primary source of information, it is important that we explore the quality of the information that they receive, particularly on issues that directly impact the health and well-being of Americans, as well as the billions who use your site around the world. Accordingly, I am writing out of my concern that YouTube is surfacing and recommending messages that discourage parents from vaccinating their children, a direct threat to public health, and reversing progress made in tackling vaccine-preventable diseases.

The scientific and medical communities are in overwhelming consensus that vaccines are both effective and safe. There is no evidence to suggest that vaccines cause life-threatening or disabling diseases, and the dissemination of unfounded and debunked theories about the dangers of vaccinations pose a great risk to public health. In fact, the World Health Organization listed vaccine hesitancy – the reluctance or refusal to vaccinate despite the availability of vaccines – as one of the top threats to global health in 2019. In a dramatic demonstration of the dangers, Washington state declared a public health emergency due to a measles epidemic in Clark County, signaling the resurgence of a potentially fatal disease that was effectively eliminated from the United States decades ago by vaccines.

There is strong evidence to suggest that at least part of the source of this trend is the degree to which medically inaccurate information about vaccines surface on the websites where many Americans get their information, among them YouTube and Google search. As I have discussed with you in other contexts, and as you have acknowledged, the algorithms which power these services are not designed to distinguish quality information from misinformation or misleading information, and the consequences of that are particularly troubling for public health issues. If a concerned parent consistently sees information in their YouTube recommendations that casts doubt on the safety or efficacy of vaccines, it could cause them to disregard the advice of their children's physicians and public health experts and decline to follow the recommended vaccination schedule. Repetition of information, even if false, can often be mistaken for accuracy, and exposure to anti-vaccine content via social media may negatively shape user attitudes towards vaccination.

Additionally, even parents and guardians who seek out accurate information about vaccines could unwittingly reach pages and videos with misinformation. A report by the Guardian[1] found that on both Facebook and YouTube, suggested searches related to vaccines often led users to pages or groups

[1] https://www.theguardian.com/media/2019/feb/01/facebook-youtube-anti-vaccination-misinformation-social-media

providing medically and scientifically inaccurate information.

As a Member of Congress who is deeply concerned about declining vaccination rates around the nation, I am requesting additional information on the steps that you currently take to provide medically accurate information on vaccinations to your users, and to encourage you to consider additional steps you can take to address this growing problem. I was pleased to see YouTube's recent announcement that it will no longer recommend videos that violate its community guidelines, such as conspiracy theories or medically inaccurate videos, and encourage further action to be taken related to vaccine misinformation.

Specifically, I request that you provide answers on the following questions:

- Does content which provides medically inaccurate information about vaccines violate your terms of service?
- What action(s) do you currently take to address misinformation related to vaccines on your platforms? Are you considering or taking additional actions?
- Do you accept paid advertising from anti-vaccine activists and groups on your platforms? How much has been spent in the past year on advertising on this topic?
- What steps do you currently take to prevent anti-vaccine videos or information from being recommended to users, either algorithmically or as a suggested search result?

I appreciate your timely response to these questions and encourage you to consider what additional steps you can take to address this growing problem. As more Americans rely on your services as their primary source of information, it is vital that you take that responsibility with the seriousness it requires, and nowhere more so than in matters of public health and children's health. Thank you for your attention to this important topic.

Sincerely,

**Adam B. Schiff**
Member of Congress

# EXHIBIT D



**ADAM B. SCHIFF**
MEMBER OF CONGRESS • 28TH DISTRICT, CALIFORNIA

April 29, 2020

Sundar Pichai
Chief Executive Officer
Alphabet Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043

Susan Wojcicki
Chief Executive Officer
YouTube, LLC
901 Cherry Avenue
San Bruno, CA 94066

Dear Mr. Pichai and Ms. Wojcicki:

As we all work to control the COVID-19 pandemic, I want to thank you for the actions you have taken to ensure Google's users are provided with timely, authoritative, and factual sources. I was encouraged to see your early commitment to working closely with other social media companies to jointly combat fraud and misinformation during this societal challenge that transcends any one platform or service.

As we face this public health crisis, Americans want and need to receive the best information possible so that they can keep themselves, their families, and their communities healthy. I commend you for steps you have already taken to highlight information from official health sources and to remove or limit content that promotes harmful medical misinformation. YouTube's commitment to remove videos with information that is medically unsubstantiated or contradicts World Health Organization (WHO) recommendations is an important action to protect the health and safety of billions of users. The recently announced policy of adding links to fact-checking sources for certain searches is a further step towards directing users to accurate health information.

Despite your best efforts, however, users will continue to see and engage with harmful medical content on your platforms, whether by intentionally seeking it out or otherwise. Among the harmful misinformation currently on YouTube, recent reporting has shown that it is easy to find videos spreading false and dangerous statements about the coronavirus or treatments,[1] including conspiracy theories linking the virus to 5G towers, anti-vaccine messages suggesting the virus was engineered, and videos suggesting that drinking or consuming bleach may cure the disease.

Though the best protection is removing or downgrading harmful content before users engage with it, that is not always possible. As you are likely aware, Facebook recently announced plans to display messages to any users who have engaged with harmful coronavirus-related misinformation that has since been removed from the platform and connect them with resources from the World Health Organization. I urge you to adopt a similar practice for YouTube users and others who

---

[1] Rebecca Heilweil, "How the 5G coronavirus conspiracy theory went from fringe to mainstream," *Recode*, Vox Media, April 24, 2020.

engage with harmful information on your platform, to proactively inform them and direct them to authoritative, medically accurate resources.

While taking down harmful misinformation is a crucial step, mitigating the harms from false content that is removed requires also ensuring that those who accessed it while it was available have as high a likelihood of possible of viewing the facts as well.

I recognize the complex challenges that misinformation presents to online platforms such as Google, in this and many other contexts. As we all grapple with this unprecedented health situation, I hope you will consider this suggestion for keeping users better informed. Thank you for your attention to my concerns, and I look forward to continuing our ongoing dialogue on these important issues.

Sincerely,

Adam B. Schiff
MEMBER OF CONGRESS

# EXHIBIT E

7/13/2020 (1) Susan Wojcicki on Twitter: "Thanks for reaching out @YouTube, we're working every day to protect people from misinformation and h…

Case 5:20-cv-07502 Document 1 Filed 10/26/20 Page 67 of 74



← **Tweet**

Q Search Twitter



**Susan Wojcicki** ✔ @SusanWojcicki · May 1
Thanks for reaching out. @YouTube, we're working every day to protect people from misinformation and help them find authoritative information. We appreciate your partnership and will continue to consult with Members of Congress as we address the evolving issues around #COVID19.

> **Adam Schiff** ✔ @RepAdamSchiff · Apr 30
> Misinformation is dangerous. Misinformation about public health is deadly.
>
> I sent a letter to the CEOs of @Google, @YouTube and @Twitter urging them to proactively inform users when they've interacted with medical misinformation.
>
> They can help save lives.

💬 208      ⟲ 42      ♡ 90      ⬆

**Relevant people**

**Susan Wojcicki** ✔
@SusanWojcicki
YouTube CEO

**YouTube** ✔
@YouTube
Black Lives Matter.

**Adam Schiff** ✔
@RepAdamSchiff
Representing Califo
Congressional Distri
House Intelligence (
@HouseIntel).

**What's happening**

Politics · 24 minutes ago
**American Airlines is 'review
the details' after Ted Cruz v
photographed on a flight v
wearing a mandatory mask**

#WannaGetAway
Book a low fare for your trip.
☑ Promoted by Southwest Airlin

In memoriam · 2 hours ago
**Pregnant YouTube star Nico
Thea dies at 24**

Trending in California
#LAUSD

Los Angeles Times ✔ · 1 ho
**New study suggests the ch
of a big San Andreas quake
tripled**
Trending with: San Andreas a
Ridgecrest

Show more

Terms  Privacy policy  Cookies  /
© 2020 Twitter, Inc.

## Replies

**Silverblade**  @SilverbladeDagg · May 1
Replying to @SusanWojcicki and @YouTube
Ironic that you say this to a Rep who made up a conversation between the President and the leader of Ukraine in a Congress hearing. Perhaps you should just let the free market of ideas decide, instead of censoring truth and lies and mess up both. Do something right for a change.
💬      ⟲ 2      ♡ 28      ⬆

**Ricardo Medina** @ramthrax · May 1
Replying to @SusanWojcicki and @YouTube
When totalitarianism empowers, it only remains to get out of the system.

BitChute is a peer-to-peer social video platform.
BitChute aims to put creators first and provide them with a service that they can use to flourish and express their ideas freely.
🔗 bitchute.com
💬      ⟲ 6      ♡ 23      ⬆

**Vic-Triol** @Vic_Triol · May 1
Replying to @SusanWojcicki and @YouTube

# EXHIBIT F

# CONGRESS.GOV

## H.Res.1154 - Condemning QAnon and rejecting the conspiracy theories it promotes.

116th Congress (2019-2020) | Get alerts

**Sponsor:**    Rep. Malinowski, Tom [D-NJ-7] (Introduced 09/25/2020)
**Committees:**    House - Judiciary; Intelligence (Permanent Select)
**Latest Action:**    House - 10/02/2020 Motion to reconsider laid on the table Agreed to without objection.  (All Actions)
**Roll Call Votes:**    There has been 1 roll call vote
**Tracker:**    Introduced    **Agreed to in House**

Summary(1)    **Text(2)**    Actions(13)    Titles(1)    Amendments(0)    Cosponsors(5)    Committees(2)    Related Bills(2)

There are 2 versions: [ Engrossed in House (10/02/2020) ▾ ]

**Text available as:** XML/HTML | XML/HTML (new window) | TXT | PDF (PDF provides a complete and accurate display of this text.) ?

**Shown Here:**
**Engrossed in House (10/02/2020)**

## H. Res. 1154

### *In the House of Representatives, U. S.,*

*October 2, 2020.*

Whereas, throughout history, conspiracy theories that falsely blame secret cabals or marginalized groups for society's ills have fueled prejudice, genocide, and acts of terrorism;

Whereas QAnon is a movement promoting a collection of unfounded conspiracy theories that have spread widely on the internet since 2017;

Whereas QAnon initially alleged that prominent Americans are engaged in a secret plot to control the world, while using their power to exploit children, and has expanded to embrace virtually every popular conspiracy theory of the last several decades, from questioning the truth about the September 11th terrorist attacks, to believing in alien landings, to denying the safety of vaccines;

Whereas many QAnon followers express anti-Semitic views, and the Anti-Defamation League has said that the movement's central conspiracy theory includes anti-Semitic elements;

Whereas conspiracy theories have been a central driver of anti-Semitism for centuries, and QAnon conspiracy theories are fanning the flames as anti-Semitism is on the rise in the United States and around the world;

Whereas the Federal Bureau of Investigation (FBI) has assessed with high confidence that "fringe political conspiracy theories", including QAnon, "very likely motivate some domestic extremists, wholly or in part, to engage in criminal or violent activity", and that these conspiracy theories "very likely encourage the targeting of specific people, places and organizations, thereby increasing the likelihood of violence against these targets";

Whereas the FBI bases this assessment on "events in which individuals committed crimes, plotted attacks, or successfully carried out deadly violence, and who—either before or after their arrests—attributed their actions to their conspiratorial beliefs";

Whereas QAnon adherents have been implicated in crimes that they claim their QAnon beliefs inspired, including—

> (1) a man arrested in 2018 for plotting to plant a bomb in the Illinois Capitol rotunda to make Americans aware of the "Pizzagate" conspiracy theory;

> (2) a man arrested in 2018 for using an armored car to block traffic on the Hoover Dam Bypass Bridge;

> (3) a man in Arizona arrested in 2019 for vandalizing a Catholic church;

> (4) a woman in Colorado arrested in 2019 for plotting an armed raid to kidnap her child, who had been taken from her custody;

> (5) a man charged with the murder of an organized crime boss in New York in 2019; and

> (6) a woman arrested in New York with a car full of knives after posting a video accusing Joe Biden of participating in child sex trafficking and threatening to kill him;

Whereas the FBI further assesses that "these conspiracy theories very likely will emerge, spread and evolve in the modern information marketplace * * * fostering anti-government sentiment, racial and religious prejudice, [and] increasing political tensions";

Whereas, according to the Combating Terrorism Center at the United States Military Academy at West Point, "QAnon is arguably no longer simply a fringe conspiracy theory but an ideology that has demonstrated its capacity to radicalize to violence individuals at an alarming speed";

Whereas Facebook, Twitter, and Google have removed or blocked QAnon groups and content from their platforms for violating their policies against misinformation, bullying, hate speech, and harassment;

Whereas QAnon adherents have been harming legitimate efforts to combat child exploitation and sex trafficking, including by overwhelming antitrafficking hotlines with false reports;

Whereas the conspiracy theories promoted by QAnon undermine trust in America's democratic institutions, encourage rejection of objective reality, and deepen our Nation's political polarization; and

Whereas our Nation's polarization is further accentuated by others, from the far left to the far right, promoting extreme ideologies and antigovernment conspiracy theories, hijacking legitimate peaceful protests, and encouraging followers to damage, deface, or vandalize local, State, and Federal Government properties and to attack law enforcement: Now, therefore, be it

> *Resolved,* That the House of Representatives—

(1) condemns QAnon and rejects the conspiracy theories it promotes;

(2) condemns all other groups and ideologies, from the far left to the far right, that contribute to the spread of unfounded conspiracy theories and that encourage Americans to destroy public and private property and attack law enforcement officers;

(3) encourages the Federal Bureau of Investigation, as well as all Federal law enforcement and homeland security agencies, to continue to strengthen their focus on preventing violence, threats, harassment, and other criminal activity by extremists motivated by fringe political conspiracy theories;

(4) encourages the intelligence community to uncover any foreign support, assistance, or online amplification QAnon receives, as well as any QAnon affiliations, coordination, and contacts with foreign extremist organizations or groups espousing violence; and

(5) urges all Americans, regardless of our beliefs or partisan affiliation, to seek information from authoritative sources and to engage in political debate from a common factual foundation.

Attest:

*Clerk.*

# EXHIBIT G

# CONGRESS.GOV

# H.Res.1154 - Condemning QAnon and rejecting the conspiracy theories it promotes.

116th Congress (2019-2020) | Get alerts

Summary(1)   Text(2)   **Actions(13)**   Titles(1)   Amendments(0)   Cosponsors(5)   Committees(2)   Related Bills(2)

**13** results for All Actions | Compact View

| Date | All Actions |
|---|---|
| 10/02/2020-12:34pm | Motion to reconsider laid on the table Agreed to without objection. |
| 10/02/2020-12:34pm | On agreeing to the resolution Agreed to by the Yeas and Nays: 371 - 18, 1 Present (Roll no. 218). (text: CR H5652-5653) |
| 10/02/2020-11:50am | Considered as unfinished business. (consideration: CR H5659) |
| 10/02/2020-10:45am | POSTPONED PROCEEDINGS - At the conclusion of debate on H. Res. 1154, the Chair put the question on adoption of the resolution and by voice vote, announced the ayes had prevailed. Ms. Jayapal demanded the yeas and nays and the Chair postponed further proceedings until a time to be announced. |
| 10/02/2020-10:45am | The previous question was ordered pursuant to the rule. |
| 10/02/2020-10:07am | DEBATE - The House proceeded with one hour of debate on H. Res. 1154. |
| 10/02/2020-10:06am | Rule provides for consideration of H. Res. 1153 and H. Res. 1154 with 1 hour of general debate. Previous question shall be considered as ordered without intervening motions. Measure will be considered read. Bill is closed to amendments. |
| 10/02/2020-10:06am | Considered under the provisions of rule H. Res. 1164. (consideration: CR H5652-5657) |
| 10/01/2020-9:23pm | Rule H. Res. 1164 passed House. |
| 10/01/2020-11:41am | Rules Committee Resolution H. Res. 1164 Reported to House. Rule provides for consideration of H. Res. 1153 and H. Res. 1154 with 1 hour of general debate. Previous question shall be considered as ordered without intervening motions. Measure will be considered read. Bill is closed to amendments. |
| 09/25/2020 | Referred to the Committee on the Judiciary, and in addition to the Committee on Intelligence (Permanent Select), for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned. |
| 09/25/2020 | Referred to the Committee on the Judiciary, and in addition to the Committee on Intelligence (Permanent Select), for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned. |
| 09/25/2020 | Introduced in House |

◯ Actions Overview [2]   ◯ All Actions Except Amendments [13]   ⦿ All Actions [13]

**Roll Call Votes**

See "roll call vote" in glossary   Check all   ☐ House Roll Call Vote [1]

**Action By**

☐ House [13]

**House Committees**

☐ Intelligence (Permanent Select) [1]   ☐ Judiciary [1]