# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

JOHN DOE, et al.,

　　　　　　Plaintiffs,

　　v.

GOOGLE LLC, et al.,

　　　　　　Defendants.

Case No.  20-cv-07502-BLF

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs John Doe, Michael Doe, James Doe, Henry Doe, Robert Doe, Christopher Doe, Matthew Doe, Polly St. George, Scott Degroat, David J. Hayes, Daniel Lee, Mishel Mccumber, Jeff Pedersen, Jordan Sather, and Sarah Westall (collectively, "Plaintiffs") filed the complaint in this action on October 26, 2020, asserting claims against Defendants Google LLC ("Google") and YouTube LLC ("YouTube") for breach of contract, breach of covenant of good faith and fair dealing, and violation of First Amendment right to freedom of speech. *See* Compl., ECF 1. The next day, Plaintiffs filed a motion seeking a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue. *See* Mot., ECF 8. In light of the time between the conduct alleged in the complaint and the application for the TRO, The Court directed Defendants to respond by October 30, 2020. ECF 16. The Court held a video hearing on the motion on November 2, 2020, at which Plaintiffs and Defendants' counsels appeared. As set forth below, Plaintiffs' motion is DENIED.

## I.　　BACKGROUND

Plaintiffs are "journalists, videographers, advocates, commentators and other individuals who

regularly exercise their right to free speech under the First Amendment of the Constitution of the United States." Compl. ¶ 1. Defendants are YouTube, an online video-sharing platform, and Google, YouTube's parent company.

Plaintiffs created eighteen channels on the YouTube platform. *Id*. Plaintiffs describe their channels as "extremely controversial" "conservative news" channels that feature content about "Hunter Biden and the Ukraine scandal," "the ongoing corruption probe," "social media censorship," "race relations or protests in America," and "anonymous posts on political issues by someone identifying themselves as 'Q.'" Mot. at 8, 15; Compl. ¶ 8. Plaintiffs allege that as of October 15, 2020, their channels attracted over 4.5 million subscribers and over 800 million views. *Id*. In posting content to the YouTube platform, Plaintiffs entered into a contract with YouTube, as detailed in YouTube's Terms of Service ("TOS"). Compl. ¶ 1; *see* ECF 21-1, Exhs. 1 (TOS), 2 (Community Guidelines), 3 (harassment and cyberbullying policy), 4 (hate speech policy), and 5 (channel or account terminations).

Although the complaint and TRO application provide only vague descriptions about the content on Plaintiffs' channels, Defendants offer further details. Defendants submitted the declaration of a YouTube employee who works on the company's Trust and Safety team. YouTube Decl., ECF 21-1. The employee stated that Plaintiffs' channels "were rife with content espousing harmful conspiracy theories" and contained videos with "horrifying and unsubstantiated accusations of violent and criminal conduct supposedly committed by specific individuals." Oppo., ECF 21, at 5 (citing YouTube Decl., ¶¶ 23-25). For example, the employee reported that videos posted on the channel "JustInformed Talk" suggested that Hillary Clinton "was involved with satanic rituals with children," (including "human ritual sacrifice") while videos posted on the "TRUReporting" channel made claims about famous Americans, including that one "eats babies," another "killed his wife," others are "pedophiles or 'pedowoods,'" and others still "breed children

in order to sell them." YouTube Decl. ¶¶ 23-24.

On October 2, 2020, the United States House of Representatives passed Resolution 1154 that "condemn[ed] QAnon and reject[ed] the conspiracy theories it promotes" based on the fact that QAnon conspiracy motivated anti-Semitism and domestic extremists to engage in criminal or violent activity. Condemning QAnon and rejecting the conspiracy theories it promotes, H.R. Res. 1154, 116th Cong. (2020). The Resolution further highlighted that "Facebook, Twitter, and Google [had already] removed or blocked QAnon groups and content from their platforms for violating their policies against misinformation, bullying, hate speech, and harassment." *Id*.

On October 15, 2020, YouTube announced that it would "tak[e] another step in [its] efforts to curb hate and harassment by removing more conspiracy theory content used to justify real-world violence." *See* "Managing harmful conspiracy theories on YouTube," YouTube, Oct. 15, 2020, https://blog.youtube/news-and-events/harmful-conspiracy-theoriesyoutube. The post explicitly mentioned QAnon. *Id*. To this end, YouTube amended its Community Guidelines harassment and cyberbullying policy to include a new example of prohibited behavior: "Targeting an individual and making claims they are involved in human trafficking in the context of a harmful conspiracy theory where the conspiracy is linked to direct threats or violent acts." *Compare* ECF 14, Exh. C (Internet Archive, October 15, 2020) *with* ECF 14, Exh. D (Internet Archive, October 17, 2020).

That same day, YouTube "abruptly instigated a mass purge of conservative accounts, including those operated by plaintiffs, based on its 'hate and harassment' policies" ("the Takedown"). Compl. ¶ 6. This purge included Plaintiffs' YouTube channels. Defendants confirmed that YouTube "terminated (i.e., removed) Plaintiffs' channels from the YouTube service for multiple violations of the Community Guidelines." YouTube Decl. ¶ 22. Plaintiffs contend that the Takedown occurred before YouTube amended its Community Guidelines. Mot. at 6. Defendants, however, maintain that the Takedown occurred only after the Community

Guidelines were amended. YouTube Decl. ¶ 22.

Plaintiffs submitted evidence that they received an email notice from YouTube that their YouTube channel had been suspended or deleted. *See* ECF 14 at 8 ¶ 8, 11 ¶ 8, 14 ¶ 8, 17 ¶ 8, 20 ¶ 8, 22 ¶ 8, 25 ¶ 8, 27 ¶ 8, 29 ¶ 8, 31 ¶ 8, 34 ¶ 8, 36 ¶ 8, 38 ¶ 8, 40 ¶ 8, 43 ¶ 8 (declarations). The notice referenced YouTube's cyberbullying and harassment policy, although Plaintiffs believe that "[their] content was not cyberbullying or harassing in the ways described in the policy that existed on or before October 15, 2020." *Id*. YouTube's Trust and Safety team member explained that YouTube terminated Plaintiffs' channels because videos in those channels "may incite others to 'take action' and may cause harm to our users or other people." YouTube Decl. ¶ 26. The employee pointed to a May 2019 Federal Bureau of Investigation bulletin that cited QAnon as among the conspiracy theories that "very likely will emerge, spread, and evolve in the modern information marketplace, occasionally driving both groups and individual extremists to carry out criminal or violent acts." *Id*.

Plaintiffs filed suit in this Court alleging that Defendants violated their contractual and First Amendment rights when they "excised them and their political viewpoints from the YouTube platform without notice, just days 19 before the 2020 presidential election." Compl. ¶¶ 1, 69-215 (claims for relief). Plaintiffs request the Court issue a TRO that the "Defendants, along with their agents, employees, and successors, shall be restrained and enjoined from breaching their contract with Plaintiffs, as set forth in YouTube's Terms of Service, by taking down their videos and/or YouTube channels that discuss, analyze, or mention "QAnon."" Mot. at 18. Plaintiffs seek an injunction compelling YouTube to restore their content.

## II.     LEGAL STANDARD

Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy," that is never awarded as of right.

4

*Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted). "It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). A temporary restraining order is "not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citation omitted).

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

Because the Plaintiffs here seek a mandatory injunction—one that "orders a responsible party to 'take action''—"[they] must establish that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484

(1996); *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015).

### III.   DISCUSSION

After carefully considering the parties arguments in the briefing and at the motion hearing, the Court concludes Plaintiffs have not satisfied the requirements for issuance of a TRO.

### A.   Anonymous Declaration

As an initial matter, the Court considers Defendants' submission of a declaration by an anonymous YouTube employee who works on YouTube's Trust and Safety team. *See* YouTube Decl.; *see also* ECF 25. Plaintiffs objected, arguing that Defendants were required to explain the circumstances justifying anonymity. *See* ECF 23 at 1. The Court requested Defendants demonstrate good cause for the anonymous declaration along with a signed version of the affidavit be delivered to the Court in hard copy for in camera review. *See* ECF 25. The Court concludes that there is good cause to redact the name of the declarant. And, having conducted an in camera review of the declaration, the Court is satisfied that a real individual employed at YouTube as described in the declaration has signed it.

### B.   Likelihood of Success on the Merits

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia*, 786 F.3d at 740. As noted above, because Plaintiffs seek a mandatory injunction, they "must establish that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Id.* at 740. Plaintiffs fall short of this bar.

Although Plaintiffs' lawsuit is based on contract and First Amendment theories, their TRO application focuses on their contract-based claims. *See, e.g*., Mot. at 12-15 (arguing that Plaintiffs did not materially breach the TOS contract). Plaintiffs argue that under the TOS there are only three circumstances under which Defendants may terminate or suspend their channels:

> "YouTube may suspend or terminate your access, your Google account, or your Google account's access to all or part of the Service

United States District Court
Northern District of California

> if (a) you materially or repeatedly breach this Agreement; (b) we are required to do so to comply with a legal requirement or a court order; or (c) we believe there has been conduct that creates (or could create) liability or harm to any user, other third party, YouTube or our Affiliates."

Mot. at 12; *see* ECF 21-1, Exh. 1, "Account Suspension & Termination." Defendants respond that this provision is inapt here because it only governs YouTube's right to "suspend or terminate your access, your Google account, or your Google account's access to all or part of the Service." Oppo. at 8-9; *see* ECF 21-1, Exh. 1, "Account Suspension & Termination." They argue that YouTube did not suspend or terminate Plaintiffs' access to YouTube or their Google accounts, but rather suspended Plaintiffs' channels and removed the videos and other features associated with those channels. Oppo. at 9. The Takedown, Defendants contend, is thus governed by the TOS provisions titled "Content on the Service" and "Removal of Content by YouTube." *Id.*; *see* ECF 21-1, Exh. 1. These provisions state that

> Content is the responsibility of the person or entity that provides it to the Service. YouTube is under no obligation to host or serve Content. If you see any Content you believe does not comply with this Agreement, including by violating the Community Guidelines or the law, you can report it to us.

ECF 21-1, Exh. 1, "Content on the Service," and

> If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion. We will notify you with the reason for our action unless we reasonably believe that to do so: (a) would breach the law or the direction of a legal enforcement authority or would otherwise risk legal liability for YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates. You can learn more about reporting and enforcement, including how to appeal on the Troubleshooting page of our Help Center.

ECF 21-1, Exh. 1, "Removal of Content by YouTube." The Defendants claim that YouTube permissibly suspended Plaintiffs' channels after concluding that the channels "amounted to

United States District Court
Northern District of California

material that could cause real-world harm to users and third parties." Oppo. at 9 (citing YouTube Decl. ¶¶ 22-26).

Upon reviewing YouTube's TOS agreement in totality, the Court agrees with Defendants. Defendants plausibly argue that the actions they took were made under YouTube's TOS Provision "Removal of Content by YouTube." *See Lewis v. Google LLC*, 461 F. Supp. 3d 938, 962 (N.D. Cal. 2020) ("YouTube's terms and guidelines explicitly authorize YouTube to remove or demonetize content that violate its policies, including 'Hateful content.' Therefore, Defendants' removal or demonetization of Plaintiff's videos with 'Hateful content' or hate speech was authorized by the parties' agreements and cannot support a claim for breach of the implied covenant of good faith and fair dealing."); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. Mar. 13, 2020), *appeal docketed*, No. 10-15657 (9th Cir. Apr. 14, 2020) (YouTube did not breach TOS by removing plaintiffs' videos where the TOS "authorized YouTube to do exactly that"). Both Plaintiffs' declarations and the email notice forwarded by the Defendants indicate that the action Defendants took was against Plaintiffs' YouTube accounts, not their Google accounts. *See* ECF 14 at 8 ¶ 8, 11 ¶ 8, 14 ¶ 8, 17 ¶ 8, 20 ¶ 8, 22 ¶ 8, 25 ¶ 8, 27 ¶ 8, 29 ¶ 8, 31 ¶ 8, 34 ¶ 8, 36 ¶ 8, 38 ¶ 8, 40 ¶ 8, 43 ¶ 8 ("suspension or deletion of my channel"); ECF 21-1, Exh. 9. ("YouTube account"); *see also* YouTube Decl. ¶ 28.

The parties also dispute whether the Community Guidelines were amended before or after the Takedown occurred. The Court notes that there is contested evidence before it on this point, which in and of itself prevents the Plaintiffs from meeting their high burden. And, even if the Court were to accept Plaintiffs' Takedown timeline, that YouTube added a new example of violative conduct to its harassment and cyberbullying policy does not change the calculus here. Indeed, it is undisputed that at the time of the Takedown, the harassment and cyberbullying policy otherwise remained the same and still prohibited "[c]ontent that threatens individuals is not allowed on

YouTube." ECF 14, Exhs. C, D; ECF 21-1, Exh. 3.

With respect to Plaintiffs' argument that YouTube contractually owed them an explanation for why their channels were suspended or deleted, Plaintiffs' own declarations belie this theory as they state that YouTube referenced its harassment and cyberbullying policy in its email notices to the Plaintiffs. *See* ECF 14 at 8 ¶ 8, 11 ¶ 8, 14 ¶ 8, 17 ¶ 8, 20 ¶ 8, 22 ¶ 8, 25 ¶ 8, 27 ¶ 8, 29 ¶ 8, 31 ¶ 8, 34 ¶ 8, 36 ¶ 8, 38 ¶ 8, 40 ¶ 8, 43 ¶ 8; *see also* ECF 21-1, Exh. 9. The contract did not require that Plaintiffs agree with the reasoning YouTube provided. And, in addition to providing Plaintiffs with cause for the termination, it provided them with an appeal process. ECF 21-1, Exh. 1 at 4, "Removal of Content by YouTube" ("You can learn more about reporting and enforcement, including how to appeal on the Troubleshooting page of our Help Center."), Exh. 9. The Plaintiffs do not appear to have attempted to avail themselves of this process.

Finally, Plaintiffs conceded at the motion hearing that they did not establish a First Amendment theory in their TRO application. Accordingly, the Court does not consider the merits of such a theory at this time.

### C. Remaining Factors

Because the Court has concluded that Plaintiffs have failed to show, at "an irreducible minimum that there is a fair chance of success on the merits," the Court cannot enter injunctive relief based on the remaining three factors. *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).

### IV.    ORDER

The Court DENIES Plaintiffs' motion for a TRO. This Order is without prejudice to Plaintiffs' filing a motion for preliminary injunction

**IT IS SO ORDERED.**

Dated:  November 3, 2020

_____

BETH LABSON FREEMAN
United States District Judge