DAVID H. KRAMER, State Bar No. 168452
LAUREN GALLO WHITE, State Bar No. 309075
KELLY M. KNOLL, State Bar No. 305579
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: lwhite@wsgr.com
Email: kknoll@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN DOE, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, ET AL.,<br><br>Defendants. | CASE NO.: 5:20-cv-07502-BLF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Before: Hon. Beth Labson Freeman<br>Courtroom: 3<br>Hearing Date: September 9, 2021<br>Time: 9 a.m. |

# **TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS CANNOT SAVE THEIR FIRST AMENDMENT CLAIM ........................ 2

    A. Plaintiffs Cannot Evade Dismissal By Declaring Their Theory "Novel" ............... 2

    B. Plaintiffs Offer No Legal Basis To Dramatically Expand State Action ................ 3

    C. Plaintiffs Fail To Plausibly Allege Joint Action ...................................................... 5

II. PLAINTIFFS CANNOT SAVE THEIR CONTRACT CLAIMS ..................................... 8

    A. Plaintiffs Cannot Save Their Contract Claims Based On The Alleged Suspension Of Their Channels ................................................................................ 8

    B. Plaintiffs Cannot Save Their Contract Claims Based On The Alleged Failure To Provide Notice Or An Appeals Process ................................................ 11

    C. Plaintiffs Cannot Save Their Implied Covenant Claim ......................................... 13

III. PLAINTIFFS' CONTENT MODERATION CLAIMS ARE BARRED BY SECTION 230 ..................................................................................................................... 13

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abu-Jamal v. Nat'l Pub. Radio*,
    1997 U.S. Dist. LEXIS 13604 (D.D.C. Aug. 21, 1997) ...................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 3, 10

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
    2021 U.S. Dist. LEXIS 19241 (D.D.C. Feb. 2, 2021) ........................................................ 5

*Asurvio LP v. Malwarebytes Inc.*,
    2020 U.S. Dist. LEXIS 53906 (N.D. Cal. Mar. 26, 2020) ................................................ 14

*Barnes v. Yahoo! Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ........................................................................................... 15

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ............................................................................................................ 6

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
    531 U.S. 288 (2001) ............................................................................................................ 2

*Brunette v. Humane Soc'y*,
    294 F.3d 1205 (9th Cir. 2002) ......................................................................................... 6, 7

*Collins v. Womancare*,
    878 F.2d 1145 (9th Cir. 1989) ......................................................................................... 6, 7

*Daniels v. Alphabet, Inc.*,
    2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) .........................................*passim*

*Diamond S.J. Enter. v. City of San Jose*,
    395 F. Supp. 3d 1202 (N.D. Cal. 2019) .............................................................................. 8

*Domen v. Vimeo*,
    2021 U.S. App. LEXIS 7101 (2d Cir. Mar. 11, 2021) ................................................. 2, 14

*Ebeid v. Facebook, Inc.*,
    2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) .................................................. 13

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019) ................................................................................. 2, 14, 15

*Heineke v. Santa Clara Univ.*,
    965 F.3d 1009 (9th Cir. 2020) ............................................................................................. 7

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. May 20, 2020) ................................................................. 3

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................ 12

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ............................................................................................... 1, 3, 7

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ............................................................................................ 3

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ............................................................................................ 3

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) .............................................................................................. 15

*Prager University v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) .............................................................................................. 2

*Schulken v. Wash. Mut. Bank*,
    2011 U.S. Dist. LEXIS 117280 (N.D. Cal. Oct. 11, 2011) ........................................... 9, 10

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ...................................................................................... 2, 5, 7

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018) .............................................................................. 13

*Tulsi Now, Inc. v. Google, LLC*,
    2020 U.S. Dist. LEXIS 41673 (C.D. Cal. Mar. 3, 2020) ..................................................... 7

*United States v. Price*,
    383 U.S. 787 (1966) ............................................................................................................ 6

**STATUTES**

47 U.S.C. § 230(c) ..............................................................................................................*passim*

**MISCELLANEOUS**

H.R. Res. 1154 ........................................................................................................................... 5

U.S. Const. amend. I ..................................................................................................... 1, 2, 3, 7

1  Plaintiffs seek to avoid dismissal of this action with rhetoric rather than reason. They rely
2 on unpleaded assertions or irrelevancies rather than address the myriad legal deficiencies
3 discussed in Defendants' Motion to Dismiss. Plaintiffs' opposition, in short, only confirms that
4 dismissal is warranted.

5  To defend their core theory that YouTube's private decision to suspend Plaintiffs' channels
6 violated the First Amendment, Plaintiffs wrongly suggest that the "novelty" of their state-action
7 argument is sufficient to state a claim. That is wrong. While Plaintiffs' state action theory is
8 certainly outlandish, it is also contrary to settled law—including Judge DeMarchi's recent ruling
9 in *Daniels v. Alphabet, Inc.*, 2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021), which
10 Plaintiffs conspicuously downplay, and the Supreme Court's admonition that "[e]xpanding the
11 state-action doctrine beyond its traditional boundaries would expand governmental control while
12 restricting individual liberty and private enterprise." *Manhattan Cmty. Access Corp. v. Halleck*,
13 139 S. Ct. 1921, 1934 (2019). The fact that certain members of Congress made general statements
14 about online misinformation and that the House of Representatives passed a non-binding
15 Resolution condemning the QAnon conspiracy theory does not—and, as a matter of law, cannot—
16 transform YouTube's private editorial decisions into state action. Those statements said nothing
17 about Plaintiffs or their content, and they did not compel YouTube to do anything.

18  As for their contract claims, Plaintiffs improperly attempt to rely on a different provision
19 of YouTube's Terms of Service than the one they actually put at issue in their FAC. Regardless,
20 they are still unable to identify a provision of that agreement that YouTube actually breached. The
21 Terms of Service agreement expressly authorizes YouTube to remove content under the
22 circumstances alleged here. And it makes none of the guarantees about notice or appeals that
23 Plaintiffs claim. In short, Plaintiffs have not pleaded either a viable breach of contract or implied
24 covenant claim. For many of the same reasons that this Court has already found Plaintiffs unlikely
25 to succeed on the merits of their contract claims (Order, Dkt. 27), it should now dismiss those
26 claims as a matter of law.

27  In addition to these dispositive flaws, Plaintiffs do not offer any meaningful response to
28 YouTube's assertion of its rights under Section 230. Plaintiffs spend most of their opposition on

1  the Ninth Circuit's decision in *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d
2  1040 (9th Cir. 2019), which they badly mischaracterize. That case has nothing to do with Section
3  230(c)(1), and as to Section 230(c)(2), it holds merely that material blocked because of
4  "anticompetitive animus" is not "otherwise objectionable"—a holding that has no bearing here.
5  Instead, both the Second Circuit's decision in *Domen v. Vimeo,* 2021 U.S. App. LEXIS 7101 (2d
6  Cir. Mar. 11, 2021) (which Plaintiffs misascribe to the Southern District of New York and then
7  ignore) and Judge DeMarchi's decision in *Daniels* are squarely on point and reinforce that both
8  provisions of Section 230 apply here.

## I.     PLAINTIFFS CANNOT SAVE THEIR FIRST AMENDMENT CLAIM

Plaintiffs' core claim is that Defendants violated the First Amendment by suspending Plaintiffs' YouTube channels, supposedly in response to pressure from two individual members of Congress and in light of a non-binding House Resolution. *See, e.g.*, FAC ¶¶ 10, 31-34, 37, 43, 307; Opp. at 3-5, 7-10, 12, 24-25. But, as explained in Defendants' opening brief (MTD at 7-8), Plaintiffs' invocation of the First Amendment fails as a matter of law because Google and YouTube are not the government. Plaintiffs' efforts to avoid that reality lack any foundation.

While Plaintiffs point to various different tests for state action (Opp. at 8-10), none allows them to avoid showing a close nexus between the government and the private conduct at issue. The Supreme Court could hardly have been clearer about that: "[S]tate action may be found if, ***though only if***, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (emphasis added); *accord Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999) (explaining that "contemporary decisions stress the necessity of a ***close nexus*** between the state and the challenged conduct rather than application of a mechanistic formula" (citation omitted)). As Defendants have explained (MTD at 8-12), that nexus is precisely what is missing here.

### A.     Plaintiffs Cannot Evade Dismissal By Declaring Their Theory "Novel"

Plaintiffs argue that the long line of cases rejecting First Amendment claims against private online platforms, including the Ninth Circuit's decision in *Prager University v. Google LLC*, 951

| DEFENDANTS' REPLY ISO MOTION TO DISMISS | -2- | CASE NO. 5:20-cv-07502-BLF |
|---|---|---|

1  F.3d 991 (9th Cir. 2020) (MTD at 7, 9-10), does not compel dismissal of their claim, because
2  those cases did not consider the "novel" theories Plaintiffs advance. Opp. at 9-10. As an initial
3  matter, Plaintiffs' premise is wrong. Courts have repeatedly (and recently) dismissed First
4  Amendment claims against Google and YouTube based on allegations, like Plaintiffs', that their
5  content moderation decisions were influenced by government actors. *See, e.g.*, *Lewis v. Google*
6  *LLC*, 461 F. Supp. 3d 938, 955-56 (N.D. Cal. May 20, 2020) (state action premised on Google and
7  YouTube's alleged relationships with U.S. and foreign governments), *aff'd* 2021 U.S. App.
8  LEXIS 10782 (9th Cir. Apr. 15, 2021). Indeed, in *Daniels*, Judge DeMarchi dismissed a nearly
9  identical claim, brought by the same counsel that represent Plaintiffs here, and based on ***precisely***
10 ***the same state-action theory***. *See Daniels*, 2021 U.S. Dist. LEXIS 64385, at *7; *see also* Opp. at 9
11 (acknowledging state-action theory advanced in *Daniels* "is the same as in this case").
12         Even if Plaintiffs' state action theories were actually "novel," a party cannot evade a
13 motion to dismiss merely by offering a theory so radical and baseless that no one before has
14 advanced it (and no court thus has yet had occasion to reject it). *McGary v. City of Portland*, 386
15 F.3d 1259 (9th Cir. 2004) (*see* Opp. at 8-9), does not hold otherwise. *McGary* has nothing to do
16 with the First Amendment or state action, and its pre-*Twombly* observations neither give *carte*
17 *blanche* to "novel" legal theories nor override the Supreme Court's instruction that plaintiffs must
18 allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
19 face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Mollett v. Netflix, Inc.*, 795 F.3d 1062,
20 1065 (9th Cir. 2015) (explaining that a motion to dismiss should be granted where there is "a lack
21 of a cognizable legal theory" and affirming dismissal of claim based on a legal "issue of first
22 impression for this Circuit").
23         **B.     Plaintiffs Offer No Legal Basis To Dramatically Expand State Action**
24         Plaintiffs' state action gambit flouts the Supreme Court's admonition that state action
25 should not be expanded "beyond its traditional boundaries." *Halleck*, 139 S. Ct. at 1934. And
26 under those boundaries, Plaintiffs have not come close to stating a viable claim.
27         Plaintiffs argue throughout their brief that, by suspending Plaintiffs' channels, Defendants
28 were allegedly succumbing to pressure from Adam Schiff and Nancy Pelosi, members of

1  Congress who communicated about online misinformation, and from the House of
2  Representatives, which passed a non-binding Resolution condemning QAnon. *See, e.g.*, Opp. at 3-
3  5, 7-10, 12, 24-25. But Plaintiffs do not cite a single authority that supports the idea that general
4  encouragement from government officials, especially those acting without any force of law, could
5  transform private action into state action. Plaintiffs refer to a series of cases, unrelated to state
6  action, in which courts have generally recognized the influence of members of Congress, held that
7  certain acts by members of Congress warrant prosecution for corruption or bribery, or upheld
8  Congress' power to issue subpoenas. Opp. at 12-13. Of course, members of Congress can wield
9  influence and are capable of taking "official acts" that can subject them to criminal charges, but
10 none of that has anything to do with this case.

11      Nor do Plaintiffs meaningfully distinguish the cases discussed in Defendants' opening
12 brief. MTD at 9-11. *Daniels*, for example, is directly on point, but Plaintiffs say virtually nothing
13 about it, and they certainly offer no reason for this Court not to follow Judge DeMarchi's lead in
14 rejecting the virtually identical state action theory advanced here.

15      As for *Abu-Jamal v. Nat'l Pub. Radio*, 1997 U.S. Dist. LEXIS 13604 (D.D.C. Aug. 21,
16 1997), *aff'd* 1998 U.S. App. LEXIS 15476 (D.C. Cir. July 8, 1998), Plaintiffs argue that there was
17 "no suggestion of joint action" in that case (Opp. at 13), but the state-action theory rejected there
18 was no different from the one here. *Compare Abu-Jamal*, 1997 U.S. Dist. LEXIS 13604, at *15-17
19 (evaluating theory that "the public statements by a United States Senator and the Fraternal Order
20 of Police condemning a decision by NPR to air Jamal's commentaries could be considered
21 government encouragement or compulsion of a private act"), *with* FAC ¶¶ 30, 37, 43, 304, 307,
22 312. If anything, Plaintiffs' theory here is ***weaker*** since the alleged statements from individual
23 members of Congress were entirely general, making no specific reference to Plaintiffs or their
24 content, much less demanding its removal. In contrast, in *Abu-Jamal*, Senator Dole set his sights
25 on the plaintiff's broadcast specifically, yet the court still found no state action. *See* 1997 U.S.
26 Dist. LEXIS 13604, at *3, *17. Plaintiffs' far more implausible and attenuated allegations of
27 government pressure do not render Plaintiffs' state-action theory any more viable than that in *Abu-*
28 *Jamal*.

Plaintiffs also misunderstand the relevance of *Association of American Physicians & Surgeons v. Schiff*, 2021 U.S. Dist. LEXIS 19241 (D.D.C. Feb. 2, 2021). Of course, dismissal there was not for a lack of state action, as the claims were brought directly against Adam Schiff, but the court expressly held that Mr. Schiff's letters and public statements about medical misinformation and Section 230 (including one of the same letters Plaintiffs point to here (FAC, Ex. C)) had no causal connection to specific content-moderation decisions by private social-media platforms. *See* 2021 U.S. Dist. LEXIS 19241, at *3-5, *15-17. Plaintiffs' only response to that ruling—that they are "fully prepared to amend the Complaint again to add Rep. Schiff, Speaker Pelosi, and other powerful members of Congress" (Opp. at 14)—misses the point. Whether those individuals are parties or not, there is no plausible allegation that their statements had anything to do with YouTube's actions.

The fact that Plaintiffs also point to a non-binding House Resolution does not make their case stronger. Plaintiffs say that House Resolution 1154 is "government action, and a public, collective and Congressional statement." Opp. at 14. Again, that misses the point. That the Resolution lacks the force of law is *one* reason why it does not make YouTube into a state actor, but it is not the *only* one. Whatever its legal status, the Resolution does not purport to compel anyone to do anything. It makes no reference to Plaintiffs or their content; it says nothing about whether such content should be removed from YouTube; and it makes no threats or demands of any private party. Of course, as the Ninth Circuit's decision in *Sutton* makes clear, even an actual law that is binding on private parties and expressly compels them to act is not enough to make those private parties into state actors. *Sutton*, 192 F.3d at 838-39. House Resolution 1154 certainly does not and cannot do so.

**C.     Plaintiffs Fail To Plausibly Allege Joint Action**

Plaintiffs offer no serious response to *Sutton*'s holding that private actors generally cannot be held liable as state actors under a compulsion theory. 192 F.3d at 836-39. Plaintiffs effectively acknowledge that *Sutton* rules out any compulsion argument, but they say it leaves open a "joint venture" theory, whereby state action can be found if "the private defendant and the state were jointly pursuing an unconstitutional end." Opp. at 10. But nothing like that is plausibly alleged

1   here. Plaintiffs offer unadorned conclusions and loud rhetoric, but no facts from which the Court
2   could infer that YouTube entered into some kind of "joint venture" with the government to
3   remove Plaintiffs' content.

4   Indeed, the very cases Plaintiffs cite (Opp. at 11-12) only confirm that they have no viable
5   joint-action claim. *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989), **rejected** a joint-action
6   claim arising from a citizen's arrest of individuals protesting on the defendant's private property,
7   which the plaintiffs sought to characterize as joint action with state law enforcement officers who
8   were on the scene and who later prosecuted the protesters. *Id*. at 1148-49. The court explained that
9   the joint-action "inquiry focuses on whether the state has 'so far insinuated itself into a position of
10  interdependence with [the private entity] that it must be recognized as a joint participant in the
11  challenged activity.'" *Id*. at 1154. "Joint action therefore requires a **substantial degree of**
12  **cooperative action**." *Id*. (emphasis added). Even more so than in *Collins*, Plaintiffs here allege no
13  such interdependent and cooperative action between YouTube and the government.

14  As such, this case is nothing like *United States v. Price*, which involved assaults by a
15  group of state law enforcement officers and private parties, where the "[s]tate officers participated
16  in every phase of the alleged venture: the release from jail, the interception, assault and murder"
17  and "[i]t was a joint activity, from start to finish." 383 U.S. 787, 794-95 (1966). Plaintiffs point to
18  their allegation that YouTube's CEO tweeted in response to Mr. Schiff that YouTube would
19  "consult with Members of Congress" regarding "issues around #COVID19" (Opp. at 4, 12; FAC,
20  Ex. E). But that is not remotely joint action or "willful participation" in state action. Like any
21  other private party, YouTube has the right to speak to representatives about issues of the day. And
22  nothing in that Tweet, or in anything else Plaintiffs have alleged, even hints at coordinated action
23  between YouTube and Congress to suspend Plaintiffs' channels. *Accord Brunette v. Humane*
24  *Soc'y,* 294 F.3d 1205, 1211 (9th Cir. 2002) (private party can be liable under a "joint action"
25  theory "only if its particular actions are 'inextricably intertwined' with those of the government").

26  Indeed, Plaintiff still cannot get around the fact that the government action they focus on
27  made no reference to, and reflects no participation in, their particular case. MTD at 8-11; *see Blum*
28  *v. Yaretsky*, 457 U.S. 991, 1010 (1982) (no state action where government regulations did "not

1  dictate the decision to discharge or transfer in a particular case"); *Heineke v. Santa Clara Univ.*,
2  965 F.3d 1009, 1014 (9th Cir. 2020) (same). While Plaintiffs acknowledge that reality, their only
3  response (beyond incredulity at the state of the law) is to suggest that Mr. Schiff and Ms. Pelosi's
4  statements somehow *did* command a particular result in Plaintiffs' specific case because
5  "Congress demanded that the unpopular speech dubbed 'misinformation,' and QAnon-related
6  speech be limited and erased." Opp. at 11 & n.3. While that mischaracterizes the statements at
7  issue, it is also irrelevant. The "specific case" principle is meant to distinguish scenarios where
8  general government action causes a private party to act (as in *Sutton* and *Heineke*) from those
9  where the government directly involves itself in a specific decision. Only the latter can even
10 potentially give rise to state action. Plaintiffs cannot save their theory by collapsing that very
11 distinction.

12   In any event, the level of specificity in these statements is far from the only problem with
13 Plaintiffs' reliance on them. Even if the statements had been more targeted at Plaintiffs or their
14 YouTube channels, it would not change the fact that Plaintiffs have alleged no facts to support the
15 idea that Mr. Schiff, Ms. Pelosi, or the House of Representatives—or anyone else linked to the
16 federal government—was "so far insinuated" or "inextricably intertwined" with YouTube's
17 decisions to suspend Plaintiffs' channels that those decisions could be "fairly attributable" to the
18 government. *Collins*, 878 F.2d at 1151; *Brunette*, 294 F.3d at 1211. In short, none of Plaintiffs'
19 allegations, even accepted as true, render Google or YouTube a state actor.

20   Finally, Plaintiffs do not respond—except through hand-waving—to the serious practical
21 problems that would arise from adopting the unprecedented idea that, if members of Congress
22 express their views on a public issue, private businesses or individuals who act in accordance with
23 those views suddenly become state actors. *Compare* MTD at 12, *with* Opp. at 15.

24   In sum, "Google's self-regulation, even of topics that may be of public concern, does not
25 implicate the First Amendment." *Tulsi Now, Inc. v. Google, LLC*, 2020 U.S. Dist. LEXIS 41673, at
26 *6 (C.D. Cal. Mar. 3, 2020). Accepting Plaintiffs' unprecedented theory would shrink the "robust
27 sphere of individual Liberty" that the state-action doctrine is designed to protect. *Halleck*, 139 S.
28 Ct. at 1934.

1  II.     **PLAINTIFFS CANNOT SAVE THEIR CONTRACT CLAIMS**

2         Defendants' motion addressed the various contractual promises alleged in their Amended
3  Complaint and showed that none of those gives rise to a viable breach of contract claim. Plaintiffs
4  have no serious response.

5         A.      **Plaintiffs Cannot Save Their Contract Claims Based On The Alleged**
6                 **Suspension Of Their Channels**

7         As Defendants explained (MTD at 13), Plaintiffs' main contract theory is based on a
8  provision in the Terms of Service relating to "Account Suspension & Termination" that this Court
9  has already held to be inapplicable to YouTube's mere suspension of Plaintiffs' channels. FAC
10 ¶¶ 4.b, 7; *see also, e.g.*, FAC ¶ 71; Order at 7-8 (holding that the suspension of a YouTube channel
11 and its video content is distinct from action taken against a Google account). In their opposition
12 brief, Plaintiffs try to switch gears. Conceding the irrelevance of the provision they actually put at
13 issue in both their original and their amended complaints, Plaintiffs instead focus on a separate,
14 unpleaded provision, which states that YouTube may remove content "in its discretion" if it
15 "reasonably believe[s]" that the content "is in breach of this Agreement or may cause harm to
16 YouTube, our users, or third parties." Opp. at 17-19 (quoting Declaration of Lauren Gallo White
17 in Support of Defendants' Motion to Dismiss, Dkt. No. 40-1 ("White Decl."), Ex. 1 at 6).
18 Plaintiffs' attempt to revise their claim in opposition to YouTube's motion is improper. *See*
19 *Diamond S.J. Enter. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) ("[T]he
20 complaint may not be amended by briefs in opposition to a motion to dismiss."). But even putting
21 that aside, Plaintiffs' new argument (Opp. 18-19) fails on its own terms.

22        The Terms of Service impose no obligation on YouTube to host or display content. White
23 Decl., Ex. 1 at 6. The agreement says that explicitly: "***YouTube is under no obligation to host or***
24 ***serve Content***." *Id.* at 4 (emphasis added). In trying to defend their contract claim, Plaintiffs race
25 past that language, but plainly YouTube would not breach the contract by removing that which it
26 is under no obligation to host in the first place. *See Daniels*, 2021 U.S. Dist. LEXIS 64385, at
27 *24-25.

28        But even ignoring that language as Plaintiffs do, and focusing on the content removal

1 provision in isolation, leads to the same result. Plaintiffs have not alleged anything to plausibly
2 suggest that YouTube exceeded its discretion in suspending Plaintiffs' channels, or lacked a
3 reasonable belief that those channels were in violation of the Terms of Service, or "may cause
4 harm" to YouTube, its users, or third parties. This Court has already found as much, as did Judge
5 DeMarchi. Order at 8 ("Defendants plausibly argue that the actions they took were made under
6 YouTube's TOS Provision 'Removal of Content by YouTube.'"); *Daniels*, 2021 U.S. Dist. LEXIS
7 64385, at *24-25 (rejecting materially identical contract claims based on the same content removal
8 provision). Indeed, Plaintiffs acknowledge YouTube's determination that Plaintiffs' channels
9 violated its Community Guidelines (FAC ¶¶ 12-28), including its policies against hate and
10 harassment (*see* FAC ¶ 5 & n.1; White Decl., Ex. 7). In the FAC, Plaintiffs further acknowledge
11 that their channels espoused fringe conspiracy theories (including those associated with "QAnon")
12 that have been linked to real-world violence. FAC ¶¶ 5 & n.1, 8; FAC, Ex. F.

13 While that alone should defeat any breach of contract claim, Plaintiffs now claim that their
14 content was not in violation of YouTube's policies or otherwise harmful or threatening. Opp. at
15 18, 19 & n.4. But YouTube's right to remove content does not depend on whether ***Plaintiffs***
16 believe their content violated YouTube's Terms of Service or may cause harm. And it certainly
17 does not follow that, if Plaintiffs do not consider their own videos to be harmful or harassing,
18 YouTube lacked a reasonable belief that they were.[1] Indeed, while Plaintiffs are careful to avoid

---

[1] Plaintiffs claim that *Schulken v. Washington Mutual Bank*, 2011 U.S. Dist. LEXIS 117280 (N.D. Cal. Oct. 11, 2011), shows that "whether YouTube held a 'reasonable belief' about Plaintiffs' content calls for a factual inquiry." Opp. at 18-19. But *Schulken* is readily distinguishable. There, the relevant contract incorporated by reference an affirmative, statutory obligation prohibiting creditors from reducing credit limits absent certain circumstances, including whether the creditor had "a reason to believe" that the consumer would be unable to comply with repayment terms, due to a (specifically defined) "material change in the consumer's financial circumstances." *Id.* at *21-22. The plaintiffs alleged not only that the defendants could not have had a reason to believe in such a change, but also that there was in fact no material change in the

(continued...)

| DEFENDANTS' REPLY | -9- | CASE NO. 5:20-cv-07502-BLF |
| ISO MOTION TO DISMISS | | |

1 any detailed description of the videos they posted to YouTube, they admit that their channels
2 espoused QAnon conspiracy theories and included content that could expose them to criminal
3 liability. *See* MTD at 5-6. That is more than enough to warrant the action YouTube took under the
4 Terms of Service.

5 Taking a different tack, Plaintiffs argue that, by simply "stating that YouTube breached the
6 contract by removing and demonetizing . . . content without any 'compelling, significant, or
7 legitimate reason,' Plaintiffs have sufficiently stated a breach of contract claim against YouTube."
8 Opp. at 19 (citing FAC ¶ 316); *see also* Opp. at 16 (claiming "YouTube did not believe there was
9 conduct that created or could create liability or harm to any user or third party, YouTube or its
10 affiliates" (quoting FAC ¶ 7)). This is exactly the approach to pleading that the Supreme Court
11 rejected in *Twombly* and *Iqbal*. As those cases (and countless cases since) explain, "the tenet that a
12 court must accept as true all of the allegations contained in a complaint is inapplicable to legal
13 conclusions. Threadbare recitals of the elements of a cause of action, supported by mere
14 conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiffs cannot state a breach of
15 contract claim simply by alleging that YouTube breached the contract. They must plead facts that
16 "plausibly give rise to an entitlement to relief." *Id.* at 679.

17 Plaintiffs have failed to do that. Indeed, the facts they allege actually confirm that
18 YouTube's removal actions were within its contractual rights. Recall Plaintiffs' core state action
19 theory: They allege that YouTube removed Plaintiffs' content to avoid harm to its business from
20 Congress' possible revocation of Section 230 immunity or the spectacle of "televised hearings
21 where [Defendants] will be asked probing or embarrassing questions." Opp. at 1-2, 13. As
22 explained above, those allegations do not establish state action, but if they were taken as true, they
23 would give rise to a "reasonable belie[f]" that the continued presence of that content "may cause

24 ---

25 plaintiffs' financial circumstances. *Id.* at *23-26. Here, in contrast, YouTube is under no
26 obligation to host Plaintiffs' channels or videos, and the Amended Complaint offers no plausible
27 factual allegation that YouTube's suspension of their channels exceeded its broad discretion to
28 remove content expressly conferred by the parties' agreement.

DEFENDANTS' REPLY                    -10-               CASE NO. 5:20-cv-07502-BLF
ISO MOTION TO DISMISS

1  harm to YouTube." White Decl., Ex. 1 at 6.

2      Plaintiffs' only response is the disingenuous claim that they could not possibly know why
3  Nancy Pelosi, Adam Schiff, or others (supposedly) took issue with Plaintiffs' content. Opp. at 19
4  n.4. That is non-responsive. What matters here is what YouTube believed—not why the legislators
5  might have done what Plaintiffs allege they did. And Plaintiffs' entire state action theory rests on
6  the idea that YouTube perceived a serious threat to its business if it failed to act. Accepting
7  Plaintiffs' (baseless) allegations as true, the "reasonable belief" provision gave YouTube the right
8  to remove content to prevent such potential harm. And, as a matter of law, what is authorized by
9  the express terms of the contract cannot be a breach. *See, e.g.*, *Daniels*, 2021 U.S. Dist. LEXIS
10  64385, at *25.

### B. Plaintiffs Cannot Save Their Contract Claims Based On The Alleged Failure To Provide Notice Or An Appeals Process

13      Plaintiffs fare no better in defending their claims about notice and appeals. They argue that
14  these claims raise fact questions—"whether the use of the phrase 'community guidelines' . . .
15  constitutes the provision of a 'reason' under the TOS," and "whether Defendants complied with
16  their [appeal] process"—that must be resolved at a later stage of the case. Opp. at 20. Not so.

17      As to notice, the Terms of Service say only that, where YouTube removes content, "[w]e
18  will notify you with the reason for our action" absent specified circumstances. White Decl., Ex. 1
19  at 6. This provision does not promise notice "in advance," as Plaintiffs claim (*e.g.*, FAC ¶¶ 69,
20  71), and, as Judge DeMarchi recognized, it "is not an unqualified promise to notify" (*Daniels*,
21  2021 U.S. Dist. LEXIS 64385, at *23). But in any event it is clear from the pleadings that
22  YouTube *did* notify Plaintiffs that their channels were removed and explained that they were
23  removed for violating YouTube's Community Guidelines. White Decl., Ex. 7; *see also* FAC ¶¶ 6,
24  8, 12-28.[2] Insofar as Plaintiffs expected an earlier or more specific or "informative" explanation

---

[2] Plaintiffs suggest that some "received no notice whatsoever" (Opp. at 16), but that is belied by the Amended Complaint (FAC ¶¶ 12-23, 25-28), by Plaintiffs' sworn statements (Dkt. No. 14 at 8 ¶ 8, 11 ¶ 8, 14 ¶ 8, 17 ¶ 8, 20 ¶ 8, 22 ¶ 8, 25 ¶ 8, 27 ¶ 8, 29 ¶ 8, 31 ¶ 8, 34 ¶ 8, 36 ¶ 8, 38 ¶ 8,

(continued...)

DEFENDANTS' REPLY    -11-    CASE NO. 5:20-cv-07502-BLF
ISO MOTION TO DISMISS

for YouTube's removal decisions (Opp. at 19-20), that wish has no support in the agreement. *See Daniels*, 2021 U.S. Dist. LEXIS 64385, at \*23 (dismissing contract claim where plaintiff "d[id] not plead any facts suggesting that defendants were required to notify him of the ***specific reasons*** for the removal of his content" (emphasis added)). No further factfinding is necessary to see that Plaintiffs have no breach of contract claim here. But even if there were a material dispute about whether referring to a Community Guidelines violation satisfies the notice provision, Plaintiffs do not (and could not) claim to have suffered any injury as a result of not getting a more specific explanation. *See, e.g.*, FAC ¶ 72 (alleging only that Plaintiffs have "been harmed by Defendant YouTube's failure to comply with the contract"). For that reason as well, they fail to state a claim. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028-29 (N.D. Cal. 2012) ("conclusory" allegations that "Plaintiffs are entitled to contractual damages" was "insufficient to state a claim for breach of contract").

As for appeals, while the Terms of Service direct users to YouTube's Help Center to learn "how to appeal," they make no promises about what such a process might entail. *Id.*; *see Daniels*, 2021 U.S. Dist. LEXIS 64385, at \*24 ("This statement does not guarantee an appeals process in any particular form."). Regardless, on this point as well, the notice YouTube sent to Plaintiffs makes clear that YouTube ***did*** provide Plaintiffs with an appeal process. White Decl., Ex. 7; *see also* Order at 9 (finding YouTube "provided [Plaintiffs] with an appeal process"); Opp. at 20 (conceding Defendants "did offer a process" for appeal). Any suggestion that YouTube did not "compl[y] with their [appeal] process" (Opp. at 20) is unsupported by any factual allegations. *See, e.g.*, FAC ¶ 71 (alleging only that YouTube "failed to provide the appeals process it promised," without more). And Plaintiffs' supposed "confusion" (Opp. at 20) about the contract cannot change what it does (and does not) say, or create any basis for a claim of breach.

---

40 ¶ 8, 43 ¶ 8), and by this Court's Order denying Plaintiffs' application for a temporary restraining order (Order at 9 (finding YouTube "provid[ed] Plaintiffs with cause for the termination")).

### C.  Plaintiffs Cannot Save Their Implied Covenant Claim

The same problems doom Plaintiffs' implied covenant claim. Plaintiffs do not explain how such a claim is not duplicative of their breach of contract claim (MTD at 16-17)—if anything, their opposition brief confirms that it is. Opp. at 21 (arguing, in support of their implied covenant claim, that "Defendants are alleged to be in direct breach of their own TOS"). Moreover, on the question of channel suspension, because YouTube's actions (crediting Plaintiffs' factual allegations) were expressly authorized by the Terms of Service, there can be no implied covenant claim as a matter of law. *See, e.g.*, *Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at *20-22 (N.D. Cal. May 9, 2019) ("[A] party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement."). Plaintiffs cannot evade that settled legal principle.

Plaintiffs' assertion that, "to the extent that Defendants claim they amended their TOS to permit them to eradicate the Plaintiffs from their platform, the implied covenant comes squarely into play" (Opp. at 21) is a strawman. Defendants did not amend their Terms of Service in connection with the suspension of Plaintiffs' channels. Instead, as this Court already recognized (Order at 8), YouTube simply "added a new example of violative conduct to its harassment and cyberbullying policy" while retaining its long-standing prohibition on "[c]ontent that threatens individuals" (*id.*; *see also* White Decl., Ex. 3 at 1). The implied covenant has nothing to do with this. Plaintiffs rely on *Trudeau v. Google LLC*, 349 F. Supp. 3d 869 (N.D. Cal. 2018), but that case, which considered the amendment of an agreement to add an arbitration provision, is simply inapposite. Regardless, even if Defendants *had* amended the Terms of Service in some material way, that did not "put [Plaintiffs] in a position to receive no benefits whatsoever," as Plaintiffs suggest. Opp. at 22. While Plaintiffs allege their channels were suspended, they do not claim that their access to YouTube's service was terminated. There is no basis for arguing that the parties' agreement was rendered illusory by the authority that YouTube has under the Terms of Service to act as it did.

### III.  PLAINTIFFS' CONTENT MODERATION CLAIMS ARE BARRED BY SECTION 230

In their opening brief, Defendants explained why Section 230(c)(1) and Section

1  230(c)(2)(A) protect YouTube's content-moderation decisions and bar claims seeking to hold
2  Defendants liable for them. MTD at 17-20. Plaintiffs' opposition brief does not overcome either of
3  these protections.
4  　　　　As to Section 230(c)(2)(A), Plaintiffs rely on *Enigma v. Malwarebytes*, but they
5  consistently distort the Ninth Circuit's decision. Opp. at 22-23. *Enigma* held that the catchall
6  phrase "otherwise objectionable" in Section 230(c)(2) did not cover anti-malware software that the
7  defendant allegedly blocked because of "anticompetitive animus" with a direct competitor. 946
8  F.3d at 1050-52. That holding has no bearing on this case. Plaintiffs are not (and do not claim to
9  be) competitors of YouTube. Nor do they allege that Defendants removed their content for anti-
10 competitive reasons. *Accord Domen*, 991 F.3d at 72 (distinguishing *Enigma*); *Asurvio LP v.*
11 *Malwarebytes Inc.*, 2020 U.S. Dist. LEXIS 53906, at *10, *12-13 (N.D. Cal. Mar. 26, 2020)
12 (finding that "the limitation to section 230(c)(2)(B) immunity recognized in *Enigma* does not
13 apply" where the plaintiff "does not allege, and cannot plausibly allege, that the parties are direct
14 competitors," and that a contrary conclusion would allow parties to "potentially plead around the
15 broad immunity granted by section 230(c)(2)(B) and render the statutory immunity meaningless").
16 　　　　Plaintiffs also suggest that *Enigma* somehow rejected the idea that Section 230(c)(2) gives
17 subjective discretion to service providers to decide what is objectionable. The Ninth Circuit did
18 nothing of the sort. To the contrary, *Enigma* expressly **reaffirmed** the Ninth Circuit's prior holding
19 that "the provision establishes a subjective standard whereby internet users and software providers
20 decide what online material is objectionable." 946 F.3d at 1044. *Domen* similarly recognized that
21 Section 230(c)(2) grants "significant subjective discretion" to online service providers. 991 F.3d at
22 72-73. Plaintiffs completely ignore *Domen*, other than to suggest, incorrectly, that it was issued by
23 the Southern District of New York (Opp. 23). But of course, the relevant decision (discussed in
24 Defendants' opening brief) was a published Second Circuit decision. Plaintiffs also ignore Judge
25 DeMarchi's holding in *Daniels* that Section 230(c)(2) required dismissal of state-law claims
26 premised on the removal of the plaintiff's YouTube videos—a determination that is equally
27 applicable to the allegations here. 2021 U.S. Dist. LEXIS 64385, at *36-37.
28 　　　　With respect to Section 230(c)(1), the opposition is long on rhetoric and short on

DEFENDANTS' REPLY                           -14-                    CASE NO. 5:20-cv-07502-BLF
ISO MOTION TO DISMISS

1  substance. Plaintiffs barely acknowledge, and make no effort at all to distinguish, the extensive

2  body of cases applying Section 230(c)(1) to claims just like these. MTD at 19-20. They simply

3  claim that each of the cases Defendants cite "preceded *Enigma*." Opp. at 24. Even if that were

4  true—and it is not—it would make no difference. As discussed, *Enigma* has nothing to do with

5  Section 230(c)(1). That provision is not even mentioned in the Ninth Circuit's decisions. And

6  neither the language that the Court addressed—Section 230(c)(2)(A)'s "otherwise

7  objectionable"—nor the terms that precede it ("obscene, lewd, lascivious, filthy, excessively

8  violent, [and] harassing") appear in 230(c)(1). Insofar as Plaintiffs are trying to suggest that the

9  subject-matter limitations on Section 230(c)(2) immunity should nonetheless apply to (c)(1) (Opp.

10 at 23-24), that ignores the plain language of the statute. *Compare* 47 U.S.C. § 230(c)(1), *with* 47

11 U.S.C. § 230(c)(2); *see also Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009)

12 (explaining that Section 230(c)(1) and (c)(2) are overlapping but distinct immunities with different

13 standards); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 32-33 & n.9 (2021) (same). And that

14 Plaintiffs do not consider their own speech to be "lewd, lascivious, filthy, excessively violent or

15 harassing" (Opp. at 24) is irrelevant, both because that language does not appear in Section

16 230(c)(1) and because Section 230(c)(2) allows service providers to make that subjective

17 determination for themselves.

## CONCLUSION

19 For these reasons and those in Defendants' opening brief, Plaintiffs' Amended Complaint

20 should be dismissed without further leave to amend.

21 Dated:  June 23, 2021                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
22

23                                          By:   */s/ Lauren Gallo White*
                                                  Lauren Gallo White
24                                                lwhite@wsgr.com

25                                          Attorneys for Defendants
                                            GOOGLE LLC and YOUTUBE, LLC
26

27

28