UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN DOE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, et al., <br><br> Defendants. | Case No. 20-cv-07502-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> [Re: ECF No. 40] |

Before the Court is Defendants' motion to dismiss Plaintiffs' first amended complaint, which alleges a First Amendment violation and breach of contract and the duty of good faith and fair dealing based on Defendants' suspension of Plaintiffs' YouTube accounts on October 15, 2020. ECF No. 30 ("FAC") at 1. Plaintiffs are "conservative content creators" who post videos on YouTube pursuant to the YouTube Terms of Service. *Id.* at 1, ¶ 4. Defendants own and operate YouTube.

Having considered the parties' briefs, the Court GRANTS Defendants' motion to dismiss Plaintiffs' First Amendment claim WITH PREJUDICE. With Plaintiffs' only federal claim dismissed, the Court DECLINES to extend supplemental jurisdiction to Plaintiffs' state law claims.

**I.   BACKGROUND**

The factual background and procedural history of this case is substantially set forth in the Court's November 3, 2020 order denying Plaintiffs' application for a temporary restraining order. ECF No. 27 at 1-4. On November 17, 2020, Plaintiffs filed an amended complaint. *See* FAC. On April 7, 2021, Defendants filed a motion to dismiss the first amended complaint. *See* ECF No. 40 ("Mot."). On May 19, 2021, Plaintiffs filed an opposition. *See* ECF No. 43 ("Opp."). On June 23, 2021, Defendants filed a reply. *See* ECF No. 44 ("Rep."). On August 26, 2021, the Court

granted the parties' stipulation to submit the motion without hearing. *See* ECF No. 46.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In this inquiry, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court needs not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint is not required to contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III. DISCUSSION

### A. First Amendment

Plaintiffs assert that Defendants have deprived them of their First Amendment rights by suspending their YouTube accounts.[1] FAC ¶¶ 302-19. Defendants argue that Plaintiffs fail to plead

---

[1] Plaintiffs appear to bring their First Amendment claim under § 1983. FAC ¶ 45. Claims for violations of constitutional rights by federal government actors must be brought based on *Bivens*—not § 1983. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). If this were the only deficit in Plaintiffs' First Amendment claim, then the Court would grant leave to amend. But other deficiencies make amendment of this claim futile. The Court

United States District Court
Northern District of California

sufficient facts to plausibly allege state action, because Defendants are private companies. Mot. at 7-12. Plaintiffs argue that they have pled sufficient facts to plausibly allege state action under any of four theories: (1) public function, (2) compulsion, (3) joint action, and (4) governmental nexus. Opp. at 8-15; FAC ¶¶ 44, 302-19. Plaintiffs allege that there is state action here because of the actions of federal officials, including Rep. Adam Schiff, Speaker of the House Nancy Pelosi, the U.S. House of Representatives, the U.S. Senate, and others. FAC ¶¶ 31-43.

To plead that a private defendant is liable for deprivation of constitutional rights, a plaintiff must plead facts sufficient to plausibly allege that the conduct constituted state action.[2] *Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 505 (9th Cir. 1989), *cert. denied*, 493 U.S. 899 (1989). The Supreme Court has articulated four approaches to the state action question: (1) public function, (2) state compulsion, (3) governmental nexus, and (4) joint action. *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996). The Supreme Court has not indicated whether these approaches are merely factors or independent tests. *Id.*

### i. Public Function

In their complaint, Plaintiffs assert state action based on a public function theory. FAC, ¶ 307. Defendants argue that the Ninth Circuit's decision in the *Prager* case "precludes constitutional scrutiny of YouTube's content moderation." Mot. at 7 (citing *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020)). In Plaintiffs' opposition, they appear to drop any assertion of a public function theory, and instead seem to concede that this theory is foreclosed by *Prager*. Opp. at 9-11 ("Plaintiffs allege that Defendants' censorship satisfies either the **governmental nexus test** or **the joint action test**."); *id.* at 18 ("Prager was premised on a state action theory that the Ninth Circuit did not adopt – the platform as a public function theory.")

To the extent Plaintiffs are still asserting state action under a public function theory, the Court finds that this theory is indeed foreclosed by *Prager*. For there to be state action under a

---

construes Plaintiffs' First Amendment claim as a *Bivens* claim throughout this order.

[2] While a *Bivens* claim is based on actions of the federal government, the Court will refer to "state action" throughout this order, since this is how the requirement generally appears in the case law.

3

1   public function theory, a private entity must exercise "powers traditionally exclusively reserved to
2   the State." *Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. 1921, 1924 (2019) (quoting
3   *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (2019)).  Plaintiffs assert that "YouTube
4   performs an exclusively and traditionally public function by regulating free speech within a public
5   forum."  FAC ¶ 307.  In *Prager*, the Ninth Circuit ruled that "YouTube…does not conduct a
6   quintessential public function through regulation of speech on a public forum."  951 F.3d at 998.
7   Accordingly, Plaintiffs have not pled sufficient facts to support state action under a plausible public
8   function theory.

         **ii.**    **Compulsion**

Plaintiffs argue that they have adequately pled that Defendants' alleged conduct was state action under a compulsion theory.  Opp. at 8-10.  Plaintiffs' First Amended Complaint cites statements by U.S. Rep. Adam Schiff and Speaker of the House Nancy Pelosi and an October 2020 House Resolution, which "have pressed Big Tech" into censoring political speech with threats of limiting Section 230 of the Communications Decency Act ("CDA") and other penalties. Opp. at 8-10, 15; FAC at 31-43.  Defendants argue that Plaintiffs have failed to allege sufficient facts to plausibly plead compulsion, because they have failed to plead that government actors commanded a particular result in Plaintiffs' specific cases or point to statements with any actual legal force. Mot. at 8-12.  Further, Defendants argue that Plaintiffs' compulsion theory is foreclosed by the Ninth Circuit's decision in *Sutton v. Providence St. Joseph Medical Center*, which held that "something more" is required for a compulsion claim against a private party.  192 F.3d 826, 838-39 (9th Cir. 1999); Mot. at 7-12.  In response, Plaintiffs argue that they have adequately pled the "something more" element required by *Sutton* by alleging that Defendants and the state were jointly pursuing an unconstitutional end.  Opp. at 10.  Specifically, Plaintiffs point to public statements regarding a "partnership" between Defendants and federal lawmakers.  *Id.*

For a private party's conduct to constitute state action under a compulsion theory, it must involve "such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004-1005 (1982).  To plead such a claim, a party must allege that the government "commanded a particular result in, or otherwise

4

United States District Court
Northern District of California

1    participated in, his specific case." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir.
2    2020). Plaintiffs must point to a "state regulation or custom having the force of law that compelled,
3    coerced, or encouraged" the alleged private conduct. *Johnson v. Knowles*, 113 F.3d 1114, 1120
4    (9th Cir. 1997). Further, a compulsion claim against a private party requires pleading "some
5    additional nexus that [makes] it fair to deem the private entity a governmental actor in the
6    circumstances." *Sutton*, 192 F.3d at 839.

7        The Court finds that the statements by federal lawmakers Plaintiffs point to are insufficient
8    to plead that the government "commanded a particular result in, or otherwise participated in,
9    [Plaintiffs'] specific case." *Heineke*, 965 F.3d at 1014; *see also Daniels v. Alphabet*, No. 20-cv-
10   04687-VKD, 2021 WL 1222166, at *6 (N.D. Cal. Mar. 31, 2021). Plaintiffs point to generalized
11   statements from lawmakers pertaining to "coronavirus-related misinformation," "disinformation
12   proliferating online," "QAnon-related speech," and "conspiracy theories." FAC, ¶¶ 31-43; *id.*,
13   Ex. F. None of the statements mention Plaintiffs' names, their YouTube or Google accounts, their
14   channels, or their videos. Plaintiffs argue that state actors "commanded a particular result" in their
15   case because "Plaintiffs have alleged that Congress demanded that the unpopular speech dubbed
16   'misinformation,' and QAnon-related speech be limited and erased, which is precisely what
17   Plaintiffs allege Defendants did." Opp. at 11. The Court disagrees that broad lawmaker
18   proclamations regarding "misinformation" or "QAnon-related speech," for example, are sufficient
19   to show that the government "commanded" the suspension of Plaintiffs' accounts. Even if
20   Defendants had complied with these lawmaker statements to the letter, they would still have had the
21   ultimate discretion on what videos or accounts fit into buckets like "misinformation" or "QAnon-
22   related speech."

23       The Court also disagrees with Plaintiffs that they have alleged sufficient facts about the
24   content of their videos to link their removal to the broad categories of online content mentioned in
25   the lawmakers' statements. For example, Plaintiffs plead no facts to indicate that their videos
26   pertained to COVID-19, so none of the statements from members of Congress relating to COVID-19
27   misinformation have any relevance to Defendants' alleged conduct. *See, e.g.*, FAC ¶ 8. Further,
28   Plaintiffs plead only vague facts about other subjects that leave open the question as to whether all

5

1    Plaintiffs posted about these subjects, or only some of them.  *Id*.  And none of the lawmaker
2    statements Plaintiffs cite contain clear action items relevant to Plaintiffs' allegations.  *Id*. ¶ 32
3    (encouraging YouTube to "display messages to any users who have engaged with harmful
4    coronavirus-related misinformation"); *id*. ¶ 34 (generally discussing "misconduct" related to "the
5    division and the disinformation proliferating online"); *id*., Ex. F at 81 (encouraging action on the
6    part of the FBI, intelligence community, and "all Americans").

7    Plaintiffs claim that Defendants' conduct is state action because it was in response to the
8    threat of various government penalties—the repeal of CDA Section 230 protections, "show trials"
9    in front of the U.S. Senate, and a DOJ antitrust suit against Google—allegedly linked to whether
10   Defendants appropriately moderated certain types of content.  Opp. at 1, 15; FAC ¶¶ 10, 32.  The
11   threats of penalties Plaintiffs point to are insufficient to convert private conduct into state action
12   here.  The Ninth Circuit has found that pleading "a private actor's conduct is subject to
13   penalties…is…insufficient to convert private action into that of the state."  *Heineke*, 965 F.3d at
14   1014.  Moreover, Plaintiffs fail to point to any penalties that necessarily or even likely would have
15   followed if Defendants did not suspend their accounts.  *See, e.g.,* FAC ¶ 10 (citing a DOJ antitrust
16   case against Google with no alleged relationship to content moderation decisions); *id*. ¶ 34
17   (discussing generally that "social media executives…will be held accountable for [their]
18   misconduct"); *id*. ¶ 33 (discussing removal of CDA Section 230 protections without any clear action
19   item or ultimatum); Opp. at 12-13 (citing cases related to congressional subpoena and investigation
20   powers).  These speculative "threats" to Defendants do not plausibly constitute "state regulation or
21   custom having the force of law."  *Johnson*, 113 F.3d at 1120.

22   Plaintiffs can point to no authority to support a compulsion theory of state action based on
23   penalties, particularly "threats" as speculative as the ones they point to here.  *See, e.g., Abu-Jamal*
24   *v. Nat'l. P. Radio*, No. CIV. A. 96-0594, 1997 WL 527349, at *6 (D.D.C. Aug. 21, 1997) (pressure
25   from individual members of Congress did not bring about state action because "not one of these
26   people has any legal control over [defendant's] actions."); *Daniels*, 2021 WL 1222166, at *6
27   ("[S]peculative assertions about the possibility defendants will be subpoenaed to testify before
28   Congress or exposed to some other peril if they ignore letters from Congressional representatives

do not support a theory of government action.") Courts have declined to find state action even where government penalties are far less speculative than what Plaintiffs allege, like where a law or regulation tied to state funding applies. *Blum*, 457 U.S. at 1010 ("[P]enalties imposed for violating the regulations add nothing to respondents' claim of state action."); *Heineke*, 965 F.3d at 1013-14; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State[.]"); *see also Halleck*, 139 S. Ct. at 1928 ("Put simply, being regulated by the State does not make one a state actor.") Here, no law or regulation applies—in fact, the main "threat" Plaintiffs allege is the *repeal* of a law (Section 230 of the CDA). Opp. at 3-5; FAC ¶¶ 10, 33.

Plaintiffs argue that the Court should decline to dismiss their compulsion claim here because "Plaintiffs' theory—that Speaker Nancy Pelosi and Rep. Adam Schiff coerced, substantially encouraged, and threatened Defendants to remove the type of speech that Plaintiffs express—is novel." Opp. at 9. Defendants respond that Plaintiffs' compulsion argument is "outlandish" and contrary to settled law. Rep. at 1. The Court finds that whether Plaintiffs' theory is novel or not,[3] it is not supported by law, as outlined above.

The Court also finds that Plaintiffs have not pled facts sufficient to plausibly allege the "something more" element required for a compulsion claim against a private defendant under *Sutton*. 192 F.3d at 838-41. Plaintiffs claim that they have pled facts that Defendants and the government "were jointly pursuing an unconstitutional end." Opp. at 10 (citing *Sutton*, 192 F.3d at 840). But Plaintiffs rely primarily on a Twitter exchange between Rep. Schiff and YouTube CEO Susan Wojnicki that has no alleged relevance to Plaintiffs' content, since it pertains to COVID-19 misinformation. *Id.* Moreover, as discussed below, Plaintiffs have failed to allege facts sufficient to plead that Defendants were engaged in joint action with the government.

The Court finds that Plaintiffs have failed to allege either (1) compulsion or (2) the

---

[3] The Court notes that the plaintiff in *Daniels* pointed to the same statements by individual lawmakers in Plaintiffs' complaint to support his theory of state action, which the court rejected. *Daniels*, No. 20-cv-04687-VKD, ECF No. 1 ¶¶ 20-28; *id.*, 2021 WL 1222166, at **5-7.

"something more" element necessary to bring a compulsion claim against a private actor under *Sutton*.

### iii. Joint Action

Plaintiffs assert that there is state action under a joint action theory, pointing to a Twitter exchange between Rep. Schiff and YouTube CEO Susan Wojnicki in which Ms. Wojnicki states, "We appreciate your partnership and will continue to consult with Members of Congress as we address the evolving issues around #COVID19." FAC, Ex. E at 1; Opp. at 10-15. Plaintiffs argue that this Twitter exchange shows Defendants and the federal government were in an "admitted partnership." Opp. at 13. Defendants argue that Plaintiffs fall short of plausibly pleading joint action in light of the case law. Rep. at 5-7.

Joint action is present where the government has "so far insinuated itself into a position of interdependence with [a private entity] that it must be recognized as a joint participant in the challenged activity." *Gorenc v. Salt River Project Agr. Imp. and Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)). Further, a private defendant must be a "willful participant in joint action with the state or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Joint action requires a "substantial degree of cooperative action" between private and public actors. *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).

As a threshold matter, the Schiff-Wojnicki Twitter exchange Plaintiffs point to in support of their joint action claim clearly pertains to misinformation regarding COVID-19. FAC, Ex. E at 1. As the Court discussed above, Plaintiffs have failed to allege any facts indicating that their posts pertained to COVID-19. Accordingly, it is unclear how this Twitter exchange supports a joint action theory pertaining to the suspension of Plaintiffs' channels. Since the Twitter exchange appears to be the fact Plaintiffs primarily rely on to allege joint action, Plaintiffs' failure to plead the relevance of this fact renders their joint action claim essentially unsupported. Further, it is simply implausible to read a casual Twitter exchange between one member of Congress and YouTube's CEO as joint action. Plaintiffs' theory would effectively cause companies to cease communicating with their elected representatives for fear of liability, as Defendants compellingly argue. Mot. at 12.

8

Further, Plaintiffs' allegations fail to plausibly plead a "substantial degree of cooperative action" between Defendants and the government. *Collins*, 878 F.2d at 1154. Based on Plaintiffs' allegations, their content was removed through the following series of events: federal lawmakers publicly flagged general categories of content for Defendants to consider moderating and issued threats to compel Defendants to comply, Defendants independently chose what content fit into the lawmakers' general categories, and Plaintiffs' channels happened to be some of the content Defendants decided to remove. *See, e.g.,* FAC ¶ 10. Courts have dismissed cases for lack of state action despite significantly more alleged cooperation between public and private actors compared to what Plaintiffs allege here. *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024, 1034 (9th Cir. 1989) (affirming dismissal for lack of state action in decision by private hospital pursuant to review process approved by state); *Heineke*, 965 F.3d at 1013-15 (affirming dismissal for lack of state action where private actor "receives federal and state funds…conditioned on compliance with federal and state anti-discrimination laws and regulations"); *Abu-Jamal*, 1997 WL 527349, at *5 (no plausible joint action at pleading stage where defendant is alleged to have a "close relationship" with the government); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357-58 (1974) (affirming dismissal for lack of state action where defendant "was a heavily regulated, privately owned utility"); *see also Daniels*, 2021 WL 1222166, at **6-7; *George*, 91 F.3d at 1231 (affirming dismissal for lack of state action where plaintiff and state were "acting in and as part of a conspiracy and scheme"); *Blum*, 457 U.S. at 1010-11 (no state action with "state subsidization of the operating and capital costs of the [private] facilities, payment of the medical expenses of more than 90% of the patients in the facilities, and the licensing of the facilities by the State").

The cases Plaintiffs cite also indicate that far more is necessary to plead joint action than what they have alleged here. Plaintiffs cite *US v. Price*, Opp. at 11, which involved a scheme between state officers and private citizens where "[s]tate officers participated in every phase of the alleged venture: the release from jail, the interception, assault and murder. It was a joint activity, from start to finish." 383 U.S. 787, 795 (1966). Plaintiffs have failed to plead anything close to the *Price* scheme. Ms. Wojnicki's tweet about "partnership" and "continu[ing] to consult with Members of Congress" does not suggest that government officials were involved at every step of

Plaintiffs' suspension. FAC ¶ 21. At most, Plaintiffs appear to allege that government officials identified categories of information Defendants should consider removing—there is no allegation that government officials were in the room or somehow directly involved in the decision to suspend Plaintiffs. Further, Plaintiffs cite *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). Opp. at 11. In that case, the Supreme Court found joint action where a private party "invok[ed] the aid of state officials to take advantage of state-created attachment procedures." *Lugar*, 457 U.S. at 942. In the present case, there are no allegations that Defendants invoked state or federal procedure to bring about the suspension of Plaintiffs' accounts. Defendants merely suspended Plaintiffs from Defendants own private platform. Plaintiffs also cite to the *Collins* and *Brunette v. Humane Soc'y of Ventura Cty.* cases, even though the Ninth Circuit did not find joint action in either case. *Collins*, 878 F.2d at 1154-56; *Brunette*, 294 F.3d 1205, 1210-14 (9th Cir. 2002).

Accordingly, the Court finds that Plaintiffs have failed to allege facts sufficient to plead state action under a joint action theory.

### iv. Governmental Nexus

Plaintiffs assert that they have pled facts sufficient to support that Defendants' alleged conduct was state action under a governmental nexus theory. Opp. at 10-15. Defendants argue that any sufficiently close nexus between Defendants and government officials is missing from Plaintiffs' pleadings. Rep. at 2.

State action under a governmental nexus theory requires there to be "such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley v. Rainey*, 326 F.3d 1088, 1094-95 (9th Cir. 2003). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which plaintiff complains." *Blum*, 457 U.S. at 1004-1005.

Plaintiffs appear to raise the same arguments and plead the same facts to support their joint action and governmental nexus theories. Opp. at 10-15; FAC ¶¶ 34. Further, the Ninth Circuit has analyzed the joint action and governmental nexus theories in tandem. *See, e.g., Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020). Accordingly, the Court finds that given its

above analysis finding Plaintiffs' joint action theory insufficiently pled, Plaintiffs have also failed to alleged state action under a governmental nexus theory.  Further, the Court notes that Plaintiffs have failed to point to a single case in which governmental nexus was found.  And as outlined above, courts have found no state action in cases where public officials were substantially more involved in private conduct than Defendants allegedly were in the present case.  *George*, 91 F.3d at 1231 (finding plaintiff "failed to plead a nexus" where "[t]he contract between the County and [private defendant] does show that the County regulates [defendant's] employees to some degree."); *Blum*, 457 U.S. at 1010-12; *see also Daniels*, 2021 WL 1222166, at *7.  Accordingly, the Court finds that Plaintiffs have failed to plead state action under a plausible governmental nexus theory.

Based on the inapplicability of any of the four state action tests outlined by the Supreme Court, *George*, 91 F.3d at 1230, the Court finds that Plaintiffs have failed to plead a proper First Amendment claim due to their failure to sufficiently allege that Defendants' conduct constituted state action.

### B. State Law Claims

Plaintiffs also assert state law claims for breach of contract and the duty of good faith and fair dealing.  Plaintiffs assert that the Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367, pendent to the First Amendment claim.  FAC ¶ 46.  Plaintiffs do not assert that this court has subject matter jurisdiction over their state law claims based on diversity jurisdiction, *id.*, and it appears that they cannot do so due to lack of diversity.  *Id.* ¶¶ 48, 50.  With the First Amendment claim dismissed with prejudice, there is a question as to whether this Court should exercise supplemental jurisdiction over the state law claims.

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367.  Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A district court may, in its discretion, decline to exercise supplemental jurisdiction over a state law claim where one or more of the following circumstances exists: "(1) the claim raises a novel or complex

issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

"[E]xercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). The district court's decision is informed by the "values of economy, convenience, fairness, and comity" articulated by the United States Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). *Acri*, 114 F.3d at 1001 (internal quotation marks and citation omitted). Where subject matter jurisdiction is based on federal question jurisdiction, the Ninth Circuit has held that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (internal quotation marks, citation, and alteration omitted).

The Court finds that the facts do not favor the Court exercising supplemental jurisdiction over the state law claims in this case. The Court has only preliminarily considered the merits of Plaintiffs' state law claims in considering Plaintiffs' application for a temporary restraining order, ECF No. 27, so there is little judicial economy that would be hindered by dismissing these claims. Plaintiffs' state law claims are hereby DISMISSED WITHOUT PREJUDICE.

**C.   Section 230**

Defendants argue that to the extent Plaintiffs have stated a viable claim, Defendants would be protected from liability by Section 230 of the CDA. Mot. at 17-20. Since the Court has dismissed Plaintiffs' federal claim and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court declines to consider the applicability of Section 230 to Defendants' alleged conduct.

### D. Leave to Amend

While leave to amend generally is granted liberally, the Court has discretion to dismiss a claim without leave to amend if amendment would be futile. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)). The Court finds that amendment would be futile as to Plaintiffs' First Amendment claim, so that claim is DISMISSED WITH PREJUDICE. For Plaintiffs' state law claims, the Court has declined supplemental jurisdiction because the only federal claim has been dismissed from the case.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' First Amendment claim is DISMISSED WITH PREJUDICE. A separate judgment will issue, and the Clerk shall close the file.

(2) The Court DECLINES to exercise supplemental jurisdiction for Plaintiffs' state law claims. Those claims are DISMISSED WITHOUT PREJUDICE to refiling in state court.

Dated: October 19, 2021

_____
BETH LABSON FREEMAN
United States District Judge