**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOHN DOE; et al., <br><br>        Plaintiffs-Appellants, <br><br>and <br><br>DAVID J. HAYES, <br><br>        Plaintiff, <br><br> v. <br><br>GOOGLE LLC; YOUTUBE, LLC, <br><br>        Defendants-Appellees. | No.   21-16934 <br><br>D.C. No. 5:20-cv-07502-BLF <br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted October 17, 2022
San Francisco, California

Before: McKEOWN, CALLAHAN, and VANDYKE, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appellants challenge the district court's dismissal of their complaint without leave to amend. We have jurisdiction under 28 U.S.C. § 1291 and review de novo a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "accepting as true all well-pleaded allegations of material fact and construing those facts in the light most favorable to the non-moving party." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (quoting *Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020)). For the following reasons, we affirm.

Appellants are fourteen self-described "conservative" content creators who spent years growing their YouTube channels and amassing more than 771 million views. These channels discussed topics such as "Hunter Biden and the Ukraine Scandal," "the ongoing corruption probe," "social media censorship," "race relations or protests in America," and "anonymous posts on political issues by someone identifying themselves as 'Q.'" Appellants' videos were hosted on YouTube, a video sharing platform whose Terms of Service give it discretion to terminate accounts under certain circumstances, including if YouTube believed that there was "conduct that create[d] (or could create) liability or harm to any user, other third party, YouTube or [its] Affiliates."

Appellants allege that on October 15, 2020, YouTube terminated or suspended Appellants' channels, claiming that it was "taking another step in [its]

efforts to curb hate and harassment by removing more conspiracy theory content used to justify real-world violence." Appellants filed a complaint in the Northern District of California asserting fourteen breach of contract claims, fourteen breach of the covenant of good faith and fair dealing claims, and one First Amendment claim under 42 U.S.C. § 1983.

In their claim for a First Amendment violation, which is the premise for federal court jurisdiction, Appellants asserted that YouTube and Google—the parent company of YouTube—either conspired with the federal government, or were compelled by the federal government, to take down their video content.[1] This, they argue, constitutes an activity akin to state action and supports the assertion of a constitutional claim against a private company for its conduct.[2]

In support of their assertion, Appellants cite seven events involving federal officials regarding YouTube, Google, or general social media platform moderation

---

[1] Appellants' complaint also alleged that YouTube's regulation of content on its widely used platform constituted the performance of a traditional, exclusive public function such that its actions were constrained by the Constitution. However, Appellants have not raised the public function exception on appeal after its application here was foreclosed by our opinion in *Prager University v. Google LLC*, 951 F.3d 991 (9th Cir. 2020).

[2] Appellants have conceded that they intended to bring their First Amendment claims against Google and YouTube under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which unlike a 42 U.S.C. § 1983 claim, allows for a First Amendment claim to be brought against federal officials.

policies that took place between 2019 and 2020: (1) statements by House Speaker Nancy Pelosi on possibly removing the protection provided to social media platforms under Section 230 of the Communications Decency Act; (2) a letter by Representative Adam Schiff to Google's CEO and YouTube's CEO encouraging the curbing of COVID-related misinformation on social media platforms; (3) a statement by Speaker Pelosi at a Georgetown University forum on COVID calling for greater accountability for "the division and the disinformation proliferating online"; (4) the Senate Commerce Committee's vote to compel the testimony of Google's CEO regarding content moderation; (5) the House of Representatives' passage of House Resolution 1154, a non-binding resolution condemning the "QAnon" conspiracy theory, encouraging Americans to "seek information from authoritative sources," and acknowledging social media platforms efforts to remove "QAnon groups and their content from their platforms"; (6) a Department of Justice antitrust lawsuit against Google for maintaining monopolies in general search services and search advertising; and (7) the questioning of Facebook founder Mark Zuckerberg by the Senate Judiciary Committee concerning programs used to "to coordinate censorship efforts targeting content creators and others who expressed disfavored viewpoints."

    Ruling on Appellees' Rule 12(b)(6) motion, the district court found that Appellants' allegations were insufficient to establish state action and dismissed the

claim with prejudice, concluding that the issue could not be cured through amendment.  The district court declined to exercise supplemental jurisdiction over the remaining state contract claims pursuant to 28 U.S.C. § 1367(c).  Appellants filed this timely appeal.

The First Amendment commands that "*Congress* shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I (emphasis added).  The Supreme Court has held that "the Free Speech Clause prohibits only *governmental* abridgment of speech.  The Free Speech Clause does not prohibit *private* abridgment of speech."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  However, Appellants argue that YouTube's removal of their content comes within the state-action doctrine and that YouTube can be held liable for a First Amendment violation, because YouTube was either (1) compelled by the federal government to remove the content, or (2) so entangled with the federal government that there is a sufficient nexus between the government's conduct and YouTube's conduct.

**1.** Compulsion Theory

Under the compulsion theory, a private entity's conduct may constitute state action "when the government compels the private entity to take a particular action."  *Halleck*, 139 S. Ct. at 1928; *see Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997).  For a private entity's conduct to constitute state action, the

government must have "exercised coercive power or ha[ve] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

The government actions alleged in the complaint do not meet this standard. The antitrust suit against Google and the Senate Committee testimony of certain CEOs are only tangentially related to YouTube's content moderation decisions. Moreover, those events, like the acts that are more specifically directed at YouTube—for example, Speaker Pelosi's and Representative Schiff's comments—lack force of law, rendering them incapable of coercing YouTube to do much of anything. *Cf. West v. Atkins*, 487 U.S. 42, 49–50 (1988) (finding that, in the context of 42 U.S.C. § 1983, a state actor's challenged conduct has force of law when the actor has exercised power possessed by virtue of law and was made possible only because of their grant of authority by the state). In both their briefing and at oral argument, Appellants focus on House Resolution 1154, but in addition to having no force of law, the resolution mentions Google only in passing, and neither mentions nor asks anything of YouTube. *See* H.R. Res. 1154, 116th Cong. (2020). Appellants have not alleged facts that suggest that the government compelled Appellees' actions.

Another fundamental problem with Appellants' compulsion theory is that the state-action doctrine only allows plaintiffs to hold the *government* liable for a private entity's conduct and does not support a claim against the private entity itself. *See Halleck*, 139 S. Ct. at 1928. Indeed, our precedent precludes such an inversion of liability. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) (finding it is the state actor, and not the coerced private party, that should be held liable for a constitutional violation that arose from the state's compulsion). Appellants' compulsion theory cannot sustain their First Amendment claim against YouTube and Google. *Id.* at 838–39.

**2.** Governmental Nexus

The Appellants' governmental nexus approach to the state-action doctrine is also unavailing. "Typically, the nexus has consisted of participation by the state in an action ostensibly taken by the private entity, through conspiratorial agreement . . . , official cooperation with the private entity to achieve the private entity's goal . . . , or enforcement and ratification of the private entity's chosen action . . . ." *Sutton*, 192 F.3d at 841. "[A]t bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (quoting

*Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747–48 (9th Cir. 2020)), *cert. denied*, 142 S. Ct. 347 (2021).

Appellants do not allege that sort of close connection here.  In support of their nexus theory, they focus on the Twitter exchange between Representative Schiff and YouTube's CEO.  But as the district court explained, an exchange between an individual member of Congress and YouTube's CEO about COVID-19 simply does not allege the kind of entanglement between a government entity and private conduct necessary to support a finding of state action.

Similarly, Speaker Pelosi's statements and House Resolution 1154 are insufficient to show that anyone linked to the federal government was "so far insinuated" or "inextricably intertwined" with YouTube's content-moderation decisions that those decisions could be "fairly attributable" to the government.  *Pasadena Republican Club*, 985 F.3d at 1167–68.  Indeed, Appellants have failed to show any link between the alleged actions by the Speaker and the House and YouTube's decision to remove Appellants' channels.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Even accepting Appellants' allegations of material fact as true and construing them in Appellants' favor, they fail to show the exercise of "power

possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" necessary for YouTube's actions to be akin to state action such that the company might be held liable for a First Amendment violation.  *Pasadena Republican Club*, 985 F.3d at 1167–68.

### 3. *Bivens*

In addition, Appellants' complaint does not state a *Bivens* claim.  In *Bivens*, the Supreme Court determined an individual may sue the federal government for damages resulting from violations of their constitutional rights, despite the absence of explicit creation of such a cause of action in either the Constitution or federal statute.  403 U.S. at 397.  Since then, the Supreme Court has narrowed both whom a *Bivens* action may be brought against and which constitutional violations may be the subject of a *Bivens* action.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (rejecting an extension of *Bivens* to create a "constitutional tort remedy" against private entities); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022) (rejecting a First Amendment retaliation claim against a U.S. Border Patrol agent on the grounds that Congress was better suited to authorize such a damages remedy).

Combined, *Malesko* and *Egbert* foreclose Appellants' effort to assert a First Amendment claim against Google and YouTube.  The claim is either barred by *Malesko* or would appear to expand *Bivens* contrary to the spirit of *Egbert*.

**4**. Leave to Amend

Finally, Appellants assert that even if the district court properly dismissed their complaint, they should have been granted leave to amend. Generally, we review the denial of leave to amend for an abuse of discretion, but the question of futility of amendment is reviewed de novo. *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 534 (9th Cir. 2022). Leave is not appropriate when the amendment would not save the plaintiff's lawsuit. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015).

Here, there are no apparent amendments that could provide the facts necessary to state a claim under the state-action doctrine or justify the expansion of *Bivens* to cover their claim. Indeed, Appellants have not proffered any proposed amendments that suggest otherwise. As an amendment would be futile, the district court correctly denied leave to amend. *See Californians for Renewable Energy v. Cal. Pub. Utils. Comm'n*, 922 F.3d 929, 935 (9th Cir. 2019).

**AFFIRMED.**